GENERAL TELEPHONE COMPANY OF THE SOUTH-
WEST *v.* FALCON

No. 81–574.   Argued April 26, 1982—Decided June 14, 1982

148

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BURGER, C. J., filed an opinion concurring in part and dissenting in part, *post*, p. 161.

*Thompson Powers* argued the cause for petitioner. With him on the briefs were *Mark B. Goodwin* and *E. Russell Nunnally*.

*Frank P. Hernandez* argued the cause for respondent. With him on the brief was *John E. Collins.*\*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether respondent Falcon, who complained that petitioner did not promote him because he is a Mexican-American, was properly permitted to maintain a class action on behalf of Mexican-American applicants for employment whom petitioner did not hire.

I

In 1969 petitioner initiated a special recruitment and training program for minorities. Through that program, respondent Falcon was hired in July 1969 as a groundman, and within a year he was twice promoted, first to lineman and then to lineman-in-charge. He subsequently refused a promotion to installer-repairman. In October 1972 he applied for the job of field inspector; his application was denied even though the promotion was granted several white employees with less seniority.

Falcon thereupon filed a charge with the Equal Employment Opportunity Commission stating his belief that he had been passed over for promotion because of his national origin and that petitioner's promotion policy operated against Mexican-Americans as a class. *Falcon* v. *General Telephone Co. of Southwest,* 626 F. 2d 369, 372, n. 2 (CA5 1980). In due

---

\*Briefs of *amici curiae* urging reversal were filed by *Robert E. Williams, Douglas S. McDowell,* and *Daniel R. Levinson* for the Equal Employment Advisory Council; and by *Wayne S. Bishop, Richard K. Walker,* and *Donald W. Anderson* for Republicbank Dallas.

*Jack Greenberg, James M. Nabrit III, Barry L. Goldstein, Vilma S. Martinez,* and *Morris J. Baller* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., et al., as *amici curiae* urging affirmance.

*Solicitor General Lee, Assistant Attorney General Reynolds, Jessica Dunsay Silver, Mark L. Gross,* and *Harold Levy* filed a brief for the United States as *amicus curiae.*

course he received a right-to-sue letter from the Commission and, in April 1975, he commenced this action under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.* (1976 ed. and Supp. IV), in the United States District Court for the Northern District of Texas. His complaint alleged that petitioner maintained "a policy, practice, custom, or usage of: (a) discriminating against [Mexican-Americans] because of national origin and with respect to compensation, terms, conditions, and privileges of employment, and (b) . . . subjecting [Mexican-Americans] to continuous employment discrimination."[1] Respondent claimed that as a result of this policy whites with less qualification and experience and lower evaluation scores than respondent had been promoted more rapidly. The complaint contained no factual allegations concerning petitioner's hiring practices.

Respondent brought the action "on his own behalf and on behalf of other persons similarly situated, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure."[2] The class

---

[1] App. 14. In paragraph VI of the complaint, respondent alleged: "The Defendant has established an employment, transfer, promotional, and seniority system, the design, intent, and purpose of which is to continue and preserve, and which has the effect of continuing and preserving, the Defendant's policy, practice, custom and usage of limiting the employment, transfer, and promotional opportunities of Mexican-American employees of the company because of national origin." *Id.*, at 15.

[2] *Id.*, at 13. Rule 23 provides, in part:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(2) the party opposing the class has acted or refused to act on grounds

identified in the complaint was "composed of Mexican-American persons who are employed, or who might be employed, by GENERAL TELEPHONE COMPANY at its place of business located in Irving, Texas, who have been and who continue to be or might be adversely affected by the practices complained of herein."[3]

After responding to petitioner's written interrogatories,[4] respondent filed a memorandum in favor of certification of "the class of all hourly Mexican American employees who have been employed, are employed, or may in the future be employed and all those Mexican Americans who have applied or would have applied for employment had the Defendant not practiced racial discrimination in its employment practices." App. 46–47. His position was supported by the ruling of the

---

generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

[3] App. 13–14. The paragraph of the complaint in which respondent alleged conformance with the requirements of Rule 23 continued:

"There are common questions of law and fact affecting the rights of the members of this class who are, and who continue to be, limited, classified, and discriminated against in ways which deprive and/or tend to deprive them of equal employment opportunities and which otherwise adversely affect their status as employees because of national origin. These persons are so numerous that joinder of all members is impracticable. A common relief is sought. The interests of said class are adequately represented by Plaintiff. Defendant has acted or refused to act on grounds generally applicable to the Plaintiff." Id., at 14.

[4] Petitioner's Interrogatory No. 8 stated:

"Identify the common questions of law and fac[t] which affect the rights of the members of the purported class." Id., at 26.

Respondent answered that interrogatory as follows:

"The facts which affect the rights of the members of the class are the facts of their employment, the ways in which evaluations are made, the subjective rather than objective manner in which recommendations for raises and transfers and promotions are handled, and all of the facts surrounding the employment of Mexican-American persons by General Telephone Company. The questions of law specified in Interrogatory No. 8 call for a conclusion on the part of the Plaintiff." Id., at 34.

United States Court of Appeals for the Fifth Circuit in *Johnson* v. *Georgia Highway Express, Inc.*, 417 F. 2d 1122 (1969), that any victim of racial discrimination in employment may maintain an "across the board" attack on all unequal employment practices alleged to have been committed by the employer pursuant to a policy of racial discrimination. Without conducting an evidentiary hearing, the District Court certified a class including Mexican-American employees and Mexican-American applicants for employment who had not been hired.[5]

Following trial of the liability issues, the District Court entered separate findings of fact and conclusions of law with respect first to respondent and then to the class. The District Court found that petitioner had not discriminated against respondent in hiring, but that it did discriminate against him in its promotion practices. App. to Pet. for Cert. 35a, 37a. The court reached converse conclusions about the class, finding no discrimination in promotion practices, but concluding that petitioner had discriminated against Mexican-Americans at its Irving facility in its hiring practices. *Id.*, at 39a–40a.[6]

After various post-trial proceedings, the District Court ordered petitioner to furnish respondent with a list of all Mexican-Americans who had applied for employment at the Irving

---

[5] The District Court's pretrial order of February 2, 1976, provided, in part:

"The case is to proceed as a class action and the Plaintiff is to represent the class. The class is to be made up of those employees who are employed and employees who have applied for employment in the Irving Division of the Defendant company, and no other division.

.　　　.　　　.　　　.　　　.

"Plaintiff and Defendant are to hold further negotiations to see if there is a possibility of granting individual relief to the Plaintiff, MARIANO S. FALCON." App. to Pet. for Cert. 48a–49a.

The District Court denied subsequent motions to decertify the class both before and after the trial.

[6] The District Court ordered petitioner to accelerate its affirmative-action plan by taking specified steps to more actively recruit and promote Mexican-Americans at its Irving facility. See *id.*, at 41a–45a.

facility during the period between January 1, 1973, and October 18, 1976. Respondent was then ordered to give notice to those persons advising them that they might be entitled to some form of recovery. Evidence was taken concerning the applicants who responded to the notice, and backpay was ultimately awarded to 13 persons, in addition to respondent Falcon. The total recovery by respondent and the entire class amounted to $67,925.49, plus costs and interest.[7]

Both parties appealed. The Court of Appeals rejected respondent's contention that the class should have encompassed all of petitioner's operations in Texas, New Mexico, Oklahoma, and Arkansas.[8] On the other hand, the court also rejected petitioner's argument that the class had been defined too broadly. For, under the Fifth Circuit's across-the-board rule, it is permissible for "an employee complaining of one employment practice to represent another complaining of another practice, if the plaintiff and the members of the class suffer from essentially the same injury. In this case, all of the claims are based on discrimination because of national origin." 626 F. 2d, at 375.[9] The court relied on *Payne* v.

---

[7] Respondent's individual recovery amounted to $1,040.33. A large share of the class award, $28,827.50, represented attorney's fees. Most of the remainder resulted from petitioner's practice of keeping all applications active for only 90 days; the District Court found that most of the applications had been properly rejected at the time they were considered, but that petitioner could not justify the refusal to extend employment to disappointed applicants after an interval of 90 days. See 463 F. Supp. 315 (1978).

[8] The Court of Appeals held that the District Court had not abused its discretion since each of petitioner's divisions conducted its own hiring and since management of the broader class would be much more difficult. *Falcon* v. *General Telephone Co. of Southwest*, 626 F. 2d 369, 376 (CA5 1980).

[9] The court continued:

"While similarities of sex, race or national origin claims are not dispositive in favor of finding that the prerequisites of Rule 23 have been met, they are an extremely important factor in the determination, that can outweigh the fact that the members of the plaintiff class may be complaining about somewhat different specific discriminatory practices. In addition here, the

*Travenol Laboratories, Inc.*, 565 F. 2d 895 (1978), cert. denied, 439 U. S. 835, in which the Fifth Circuit stated:

> "Plaintiffs' action is an 'across the board' attack on unequal employment practices alleged to have been committed by Travenol pursuant to a policy of racial discrimination. As parties who have allegedly been aggrieved by some of those discriminatory practices, plaintiffs have demonstrated a sufficient nexus to enable them to represent other class members suffering from different practices motivated by the same policies." 565 F. 2d, at 900, quoted in 626 F. 2d, at 375.

On the merits, the Court of Appeals upheld respondent's claim of disparate treatment in promotion,[10] but held that the District Court's findings relating to disparate impact in hiring were insufficient to support recovery on behalf of the class.[11]

---

plaintiff showed more than an alliance based simply on the same type of discriminatory claim. He also showed a similarity of interests based on job location, job function and other considerations." *Id.*, at 375–376 (citations omitted).

The court did not explain how job location, job function, and the unidentified other considerations were relevant to the Rule 23(a) determination.

[10] The District Court found that petitioner's proffered reasons for promoting the whites, rather than respondent, were insufficient and subjective. The Court of Appeals held that respondent had made out a prima facie case under the test set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792, 802, and that the District Court's conclusion that petitioner had not rebutted that prima facie case was not clearly erroneous. In so holding, the Court of Appeals relied on its earlier opinion in *Burdine* v. *Texas Dept. of Community Affairs*, 608 F. 2d 563 (1979). Our opinion in *Burdine* had not yet been announced.

The Court of Appeals disposed of a number of other contentions raised by both parties, and reserved others pending the further proceedings before the District Court on remand. Among the latter issues was petitioner's objection to the District Court's theory for computing the class backpay awards. See n. 7, *supra*.

[11] The District Court's finding was based on statistical evidence comparing the number of Mexican-Americans in the company's employ, and the number hired in 1972 and 1973, with the percentage of Mexican-Americans

After this Court decided *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, we vacated the judgment of the Court of Appeals and directed further consideration in the light of that opinion. *General Telephone Co. of Southwest* v. *Falcon*, 450 U. S. 1036. The Fifth Circuit thereupon vacated the portion of its opinion addressing respondent's promotion claim but reinstated the portions of its opinion approving the District Court's class certification. 647 F. 2d 633 (1981). With the merits of both respondent's promotion claim and the class hiring claims remaining open for reconsideration in the District Court on remand, we granted certiorari to decide whether the class action was properly maintained on behalf of both employees who were denied promotion and applicants who were denied employment.

## II

The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano* v. *Yamasaki*, 442 U. S. 682, 700–701. Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Id.*, at 701. For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Ibid.*

Title VII of the Civil Rights Act of 1964, as amended, authorizes the Equal Employment Opportunity Commission to sue in its own name to secure relief for individuals aggrieved

---

in the Dallas-Fort Worth labor force. See App. to Pet. for Cert. 39a. Since recovery had been allowed for the years 1973 through 1976 based on statistical evidence pertaining to only a portion of that period, and since petitioner's evidence concerning the entire period suggested that there was no disparate impact, the Court of Appeals ordered further proceedings on the class hiring claims. 626 F. 2d, at 380–382.

by discriminatory practices forbidden by the Act. See 42 U. S. C. § 2000e–5(f)(1). In exercising this enforcement power, the Commission may seek relief for groups of employees or applicants for employment without complying with the strictures of Rule 23. *General Telephone Co. of Northwest v. EEOC*, 446 U. S. 318. Title VII, however, contains no special authorization for class suits maintained by private parties. An individual litigant seeking to maintain a class action under Title VII must meet "the prerequisites of numerosity, commonality, typicality, and adequacy of representation" specified in Rule 23(a). *Id.*, at 330. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Ibid.*

We have repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System, Inc.* v. *Rodriguez*, 431 U. S. 395, 403 (quoting *Schlesinger* v. *Reservists Committee to Stop the War*, 418 U. S. 208, 216). In *East Texas Motor Freight*, a Title VII action brought by three Mexican-American city drivers, the Fifth Circuit certified a class consisting of the trucking company's black and Mexican-American city drivers allegedly denied on racial or ethnic grounds transfers to more desirable line-driver jobs. We held that the Court of Appeals had "plainly erred in declaring a class action." 431 U. S., at 403. Because at the time the class was certified it was clear that the named plaintiffs were not qualified for line-driver positions, "they could have suffered no injury as a result of the allegedly discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." *Id.*, at 403–404.

Our holding in *East Texas Motor Freight* was limited; we noted that "a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives." *Id.*, at 406, n. 12.

We also recognized the theory behind the Fifth Circuit's across-the-board rule, noting our awareness "that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs," and that "[c]ommon questions of law or fact are typically present." *Id.*, at 405. In the same breath, however, we reiterated that "careful attention to the requirements of Fed. Rule Civ. Proc. 23 remains nonetheless indispensable" and that the "mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." *Id.*, at 405–406.

We cannot disagree with the proposition underlying the across-the-board rule—that racial discrimination is by definition class discrimination.[12] But the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.[13] For respondent to

---

[12] See *Hall* v. *Werthan Bag Corp.*, 251 F. Supp. 184, 186 (MD Tenn. 1966).

[13] The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and

bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices. These additional inferences demonstrate the tenuous character of any presumption that the class claims are "fairly encompassed" within respondent's claim.

Respondent's complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of petitioner to hire more Mexican-Americans. Without any specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent,[14] it was error for the District Court to presume that respondent's claim was typical of other claims

---

conflicts of interest. In this case, we need not address petitioner's argument that there is a conflict of interest between respondent and the class of rejected applicants because an enlargement of the pool of Mexican-American employees will decrease respondent's chances for promotion. See *General Telephone Co. of Northwest* v. *EEOC*, 446 U. S. 318, 331 ("In employment discrimination litigation, conflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees for fringe benefits or seniority. Under Rule 23, the same plaintiff could not represent these classes"); see also *East Texas Motor Freight System, Inc.* v. *Rodriguez*, 431 U. S. 395, 404–405.

[14] See n. 4, *supra*.

against petitioner by Mexican-American employees and applicants. If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation.[15]

The trial of this class action followed a predictable course. Instead of raising common questions of law or fact, respondent's evidentiary approaches to the individual and class claims were entirely different. He attempted to sustain his individual claim by proving intentional discrimination. He tried to prove the class claims through statistical evidence of disparate impact. Ironically, the District Court rejected the class claim of promotion discrimination, which conceptually might have borne a closer typicality and commonality relationship with respondent's individual claim, but sustained the class claim of hiring discrimination. As the District Court's bifurcated findings on liability demonstrate, the individual and class claims might as well have been tried separately. It is clear that the maintenance of respondent's action as a class action did not advance "the efficiency and economy of litigation which is a principal purpose of the procedure." *American Pipe & Construction Co.* v. *Utah*, 414 U. S. 538, 553.

---

[15] If petitioner used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes. In this regard it is noteworthy that Title VII prohibits discriminatory employment *practices*, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.

We do not, of course, judge the propriety of a class certification by hindsight. The District Court's error in this case, and the error inherent in the across-the-board rule, is the failure to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a). As we noted in *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.*, at 469 (quoting *Mercantile Nat. Bank* v. *Langdeau*, 371 U. S. 555, 558). Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.[16] For such an order, particularly during the period before any notice is sent to members of the class, "is inherently tentative." 437 U. S., at 469, n. 11. This flexibility enhances the usefulness of the class-action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable.

### III

The need to carefully apply the requirements of Rule 23(a) to Title VII class actions was noticed by a member of the Fifth Circuit panel that announced the across-the-board rule. In a specially concurring opinion in *Johnson* v. *Georgia Highway Express, Inc.*, 417 F. 2d, at 1125–1127, Judge Godbold emphasized the need for "more precise pleadings," *id.*, at

---

[16] "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." Fed. Rule Civ. Proc. 23(c)(1).

1125, for "without reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and the employer does not know how to defend," *id.*, at 1126. He termed as "most significant" the potential unfairness to the class members bound by the judgment if the framing of the class is overbroad. *Ibid.* And he pointed out the error of the "tacit assumption" underlying the across-the-board rule that "all will be well for surely the plaintiff will win and manna will fall on all members of the class." *Id.*, at 1127. With the same concerns in mind, we reiterate today that a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.

The judgment of the Court of Appeals affirming the certification order is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring in part and dissenting in part.

I agree with the Court's decision insofar as it states the general principles which apply in determining whether a class should be certified in this case under Rule 23. However, in my view it is not necessary to remand for further proceedings since it is entirely clear on this record that no class should have been certified in this case. I would simply reverse the Court of Appeals and remand with instructions to dismiss the class claim.

As the Court notes, the purpose of Rule 23 is to promote judicial economy by allowing for litigation of common questions of law and fact at one time. *Califano* v. *Yamasaki*, 442 U. S. 682, 701 (1979). We have stressed that strict attention to the requirements of Rule 23 is indispensable in employment discrimination cases. *East Texas Motor Freight Sys-*

*tem, Inc.* v. *Rodriguez*, 431 U. S. 395, 405–406 (1977). This means that class claims are limited to those "'fairly encompassed by the named plaintiff's claims.'" *Ante*, at 156, quoting *General Telephone Co. of Northwest* v. *EEOC*, 446 U. S. 318, 330 (1980).

Respondent claims that he was not promoted to a job as field inspector because he is a Mexican-American. To be successful in his claim, which he advances under the "disparate treatment" theory, he must convince a court that those who were promoted were promoted not because they were better qualified than he was, but, instead, that he was not promoted for discriminatory reasons. The success of this claim depends on evaluation of the comparative qualifications of the applicants for promotion to field inspector and on analysis of the credibility of the reasons for the promotion decisions provided by those who made the decisions. Respondent's class claim on behalf of unsuccessful applicants for jobs with petitioner, in contrast, is advanced under the "adverse impact" theory. Its success depends on an analysis of statistics concerning petitioner's hiring patterns.*

The record in this case clearly shows that there are no common questions of law or fact between respondent's claim and the class claim; the only commonality is that respondent is a Mexican-American and he seeks to represent a class of Mexican-Americans. See *ante*, at 153, and n. 9. We have repeatedly held that the bare fact that a plaintiff alleges racial or ethnic discrimination is not enough to justify class certification. *Ante*, at 157; *East Texas Motor Freight*, *supra*, at 405–406. Accordingly, the class should not have been certified.

---

*There is no allegation that those who made the hiring decisions are the same persons who determined who was promoted to field inspector. Thus there is no claim that the same person or persons who made the challenged decisions were motivated by prejudice against Mexican-Americans, and that this prejudice manifested itself in both the hiring decisions and the decisions not to promote respondent.

Moreover, while a judge's decision to certify a class is not normally to be evaluated by hindsight, *ante*, at 160, since the judge cannot know what the evidence will show, there is no reason for us at this stage of these lengthy judicial proceedings not to proceed in light of the evidence actually presented. The Court properly concludes that the Court of Appeals and the District Court failed to consider the requirements of Rule 23. In determining whether to reverse and remand or to simply reverse, we can and should look at the evidence. The record shows that there is no support for the class claim. Respondent's own statistics show that 7.7% of those hired by petitioner between 1972 and 1976 were Mexican-American while the relevant labor force was 5.2% Mexican-American. *Falcon* v. *General Telephone Company of Southwest*, 626 F. 2d 369, 372, 381, n. 16 (1980). Petitioner's unchallenged evidence shows that it hired Mexican-Americans in numbers greater than their percentage of the labor force even though Mexican-Americans applied for jobs with petitioner in numbers smaller than their percentage of the labor force. *Id.*, at 373, n. 4. This negates any claim of Falcon as a class representative.

Like so many Title VII cases, this case has already gone on for years, draining judicial resources as well as resources of the litigants. Rather than promoting judicial economy, the "across-the-board" class action has promoted multiplication of claims and endless litigation. Since it is clear that the class claim brought on behalf of unsuccessful applicants for jobs with petitioner cannot succeed, I would simply reverse and remand with instructions to dismiss the class claim.