

# The Attorney General of Texas

December 31, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gibson D. (Gib) Lewis
Chairman
Committee on Inter-Governmental Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. MW-572

Re:  Construction of article 988, V.T.C.S., which limits employment of city council members

Dear Representative Lewis:

You have asked four questions concerning the first sentence of article 988, V.T.C.S.  Prior to amendment in 1981, Acts 1981, Sixty-seventh Legislature, chapter 527, section 2, at 2230, this provision generally prohibited members of city councils from holding "any other employment or office" in their respective cities.  It now reads:

> No member of the city council shall hold any other employment or office under _any_ city government while that member is a member of _any_ city council or appointed board or commission thereunder, unless herein otherwise provided.  (Emphasis added).

Your questions are essentially as follows:

1.  Is this amended provision constitutional?

2.  If it is:

    (a)  Does it apply to both general law and home rule municipalities?

    (b)  If it applies to a particular municipality and to a councilperson serving on its effective date, does the position held by such councilperson become vacant, as a matter of law, upon the effective date?  If not, what is the effect of such statute upon such position and the service of the person holding it?

(c) Depending upon the answer to (b), are actions taken and/or votes cast by such councilperson after the effective date of the provision valid, void or voidable?

You have not cited the constitutional provision that you think might be offended by the prohibition in question. The equal protection clauses of the federal and state constitutions, United States Constitution amendment 14; Texas Constitution article I, section 3, appear to be the most likely candidates, however, and we will consider the application of these provisions.

For years courts dealt with equal protection challenges to state legislation by utilizing a two-tiered analytical model. Under this model, if a challenged statute burdens an inherently "suspect" class of persons or impinges upon a "fundamental" constitutional right, it will be struck down unless the government can demonstrate that the law is justified by some compelling need. If, on the other hand, no "suspect" class or "fundamental" right is involved, the statute will be upheld unless the contestant can show that the legislative classification bears no rational relationship to a legitimate state objective. See, e.g., Vance v. Bradley, 440 U.S. 93 (1979); San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973); Milligan v. State, 554 S.W.2d 192 (Tex. Crim. App. 1977).

Although the United States Supreme Court may at times apply the two-tiered model, see Clements v. Fashing, 50 U.S.L.W. 4869 (June 25, 1982) (plurality opinion), it also on occasion utilizes a more flexible, three-tiered approach. Under this approach, an intermediate test, which asks whether the challenged legislation "further[s] a substantial interest of the State," Plyler v. Doe, 50 U.S.L.W. 4650, 4654 (June 15, 1982), will be utilized in some instances, apparently when the court believes that the right or the class of persons affected by the challenged statute is, although not "fundamental" or "suspect," nevertheless deserving of special protection. See, e.g., Plyler v. Doe, supra; Craig v. Boren, 429 U.S. 190 (1976). No criteria that would enable one to predict when this intermediate level of scrutiny will be employed have yet been articulated.

The article 988 prohibition clearly does not burden any "suspect" class. Nor, in our opinion, does it infringe upon any "fundamental" constitutional right. See San Antonio Independent School District v. Rodriguez, supra at 33 (right must be "explicitly or implicitly guaranteed by the Constitution" to be deemed fundamental). Fashing establishes that there is no fundamental right to become a candidate for public office, and we think it follows that there is no fundamental constitutional right to hold office. The Supreme Court has also held that there is no fundamental constitutional right to

governmental employment per se.  Massachusetts Board of Retirement v. Murgia, 427 U.S. 307 (1976).

Since the article 988 prohibition affects neither a suspect class nor a fundamental constitutional right, it is not subject to "strict scrutiny."  Nor do we believe that this is the kind of situation in which a court would apply the intermediate, balancing test "substantial state interest" mode of analysis.  This leaves the rational basis test.  Under this test, as articulated in Vance v. Bradley, supra, we may find the prohibition unconstitutional only if "the varying treatment... is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational."  440 U.S. at 97.

We cannot, in this instance, conclude that no rational basis for the article 988 prohibition could be established.  A policy in favor of insuring the officeholder's allegiance to the city which he serves may underlie this provision.  We therefore conclude that the prohibition does not, on its face, deny city councilpersons the equal protection of the laws.

Your second question is answered by Woolridge v. Folsom, 564 S.W.2d 471 (Tex. Civ. App. - Dallas 1978, no writ).  There, the court held that "article 988, like other articles in chapter 2 of title 28 of the Texas Revised Civil Statutes, apply only to general-law municipalities."  Id. at 473.  See also O'Quinn, History, Status and Function of Cities, Towns and Villages, 2A V.T.C.S. XIII (Vernon 1963).

It has been suggested that when the legislature amended article 988 in 1981, it sought to broaden its scope to include home rule cities.  We disagree.  In our opinion, it simply intended to prohibit general law city councilpersons from holding a wider range of employments.  There is no evidence that it also intended to alter the result of the Woolridge case.

Regarding your third question, we note that article 988 does not prescribe any penalty.  Compare, e.g., V.T.C.S. arts. 41a-1; 5968.  Absent clear and convincing evidence, we decline to conclude that the legislature intended the prohibition to result in an automatic forfeiture of office.  But this does not mean that the prohibition is unenforceable.  Article 5991, V.T.C.S., which applies to general law cities, article 5995, V.T.C.S., provides that:

> The mayor and aldermen of any incorporated town or city may be removed from office for official misconduct....  (Emphasis added).

The civil offense of "official misconduct" is defined in article 5973, V.T.C.S., which is applicable to mayors and aldermen, article 5974, V.T.C.S., as:

> any unlawful behavior in relation to the duties of his office, wilful in its character, of any officer intrusted in any manner with the administration of justice, or the execution of the law; and includes any wilful or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law.

Compare Penal Code section 39.01 (criminal "official misconduct"). See Meyer v. Tunks, 360 S.W.2d 518 (Tex. 1962) ("official misconduct" must involve "evil intent" or be "without reasonable grounds to believe act lawful"); State v. McAllister, 365 S.W.2d 696 (Tex. Civ. App. - San Antonio 1963, no writ). Article 5992, V.T.C.S., provides that:

> When written sworn complaint charging any alderman with any act or omission which may be cause for his removal shall be presented to the mayor, he shall file the same and cause the alderman so charged to be served with a copy of such complaint, and shall set a day for the trial of the case, and notify the alderman so charged and the other aldermen of such town or city to appear on such day. The mayor and aldermen of such town or city, except the aldermen against whom complaint is made, shall constitute a court to try and determine the case.

See V.T.C.S. art. 5994 (procedure).

A statute does not operate as notice until it becomes effective. Norton v. Kleberg County, 231 S.W.2d 716 (Tex. 1950). The new article 988 prohibition became effective on June 12, 1981. In our opinion, a general law city councilperson who wilfully violated this prohibition after it became effective could have been removed from office for "official misconduct" in accordance with the foregoing statutes, either because he engaged in "unlawful behavior in relation to the duties of his office" or failed to "perform [a] duty enjoined on him by law," viz., to terminate the prohibited employment. V.T.C.S. art. 5973. A councilperson may now, or hereafter, be removed from office for this reason. But we do not believe that a councilperson who was in violation of the prohibition on June 12, 1981, automatically relinquished his office on that date.

Your fourth question was contingent upon our reaching the opposite conclusion on the third question. We therefore need not address it.

## S U M M A R Y

The first sentence of article 988, V.T.C.S., does not, on its face, deny city councilpersons the equal protection of the laws. It applies only to general law cities. It does not work in automatic forfeiture of office, but it does afford a basis for initiating a proceeding for removal from office for "official misconduct" under article 5991, V.T.C.S., and related statutes.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Patricia Hinojosa
Jim Moellinger
Joe A. Tucker