709 F.2d 1016
 32 Fair Empl.Prac.Cas. 603,
32 Empl. Prac. Dec. P 33,749
Marsha A. RICHARDSON, Plaintiff-Appellee Cross-Appellant,
and
Darlyn Kay Copeland and Carol Gassner, Plaintiffs-Appellees,
v.
Don BYRD, Sheriff, Etc., Defendant-Appellee,
and
Commissioners Court of Dallas County, et al.,
Defendants-Appellants Cross-Appellees.
 No. 82-1220.
 United States Court of Appeals,
Fifth Circuit.
 July 22, 1983.
 
 Earl Luna, Dallas, Tex., for Com'rs Court.
 Sue Lagarde, Asst. Dist. Atty., Dallas, Tex., for Sheriff Byrd.
 Linda N. Coffee, Dallas, Tex., for class.
 Clifton, L. Holmes, Kilgore, Tex., for Darlyn Kay Copeland.
 Joann Peters, Dallas, Tex., for Carol Gassner.
 Appeals from the United States District Court for the Northern District of Texas.
 Before INGRAHAM, WILLIAMS and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 This Title VII sex discrimination class action was filed by Marsha Richardson against the Dallas County Commissioners Court and the Dallas County Sheriff's Office alleging discrimination on account of sex in employment practices. The Commissioners, Richardson, and one other class member here contest the findings of liability and the relief granted by the district court. We affirm the district court's judgment in all respects except its award of attorneys' fees. We remand that award to the district court for reconsideration in light of a decision of the Supreme Court handed down while the case was before this panel.
 
 
 2
 After exhausting administrative prerequisites, Richardson filed on behalf of herself and a class of female applicants and employees a Title VII suit against the Dallas County Commissioners Court and Sheriff Clarence Jones alleging sex discrimination in the transfer and promotion of employees of the Sheriff's department.[1] With consent of the parties, the district court combined the class certification hearing with the liability phase of the suit. After trial the district court held that Richardson was denied a transfer to an "outside" district of the Civil Division of the Dallas County Sheriff's Office because of her sex. It also certified a class of past, present, and future employees and applicants pursuant to Fed.R.Civ. 23(b)(2) and held that this class "was discriminated against in hiring, transfer, promotion, and job assignment in violation of Title VII."
 
 
 3
 Notice of these findings then was sent to over 1000 members of the putative class. Of these 1000, twenty-seven testified at a series of hearings. On May 30, 1980, the district court determined that two of twenty-one applicants, Terry Jewett and Josie Warren, and three of six employees, Richardson, Debra Pullin, and Carol Gassner, were entitled to backpay or other relief. After holding several more hearings, the district court awarded backpay and other relief to these five claimants and enjoined the Sheriff's Office from continuing its practice of assigning proportionately more female than male deputies to the jail. It also awarded $37,370 to Richardson's attorney, $2864 to Gassner's attorney, and $7951 to three paralegals found to be "performing work that has traditionally been done by an attorney." At the same time, the court concluded that disciplinary procedures brought against Gassner and Pullin had not been based on retaliatory motives growing out of their suit. It also rejected Richardson's claim for the value of the use of a county car, holding that "the record fully supports the Court's findings that it was the policy of the Sheriff's Office from 1973 to the present that county vehicles could not be used by deputy Sheriffs in their personal business."
 
 
 4
 The court entered judgment on April 6, 1982. The Commissioners now appeal, arguing that the district court erred in certifying the class, in finding that the five claimants were entitled to relief, and in awarding attorneys' fees. Richardson cross-appeals, contending that the court erred in denying the additional relief requested. While Gassner does not characterize herself as a cross-appellant, she also seeks additional relief.
 
 Class Certification
 
 5
 The definition of a class is reviewable only for abuse of discretion. Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts. We recognize that these complex cases cannot be run from the tower of the appellate court given its distinct institutional role and that it has before it printed words rather than people. It follows that class certification decisions must be protected by a level of review that accords substantial discretion. At the same time we keep in mind that while Rule 23 is not self defining and employs sometimes internally overlapping indexes, it is, nonetheless, a rule with limits both internal to the rule and without. In this spirit of reviewing a trial court decision due substantial discretion we turn to this case.
 
 
 6
 The Commissioners first argue that the district court abused its discretion in certifying a class consisting of "all past, present, and future female commissioned employees and all past, present, and future female applicants for commissioned employee positions at the Sheriff's Office." Citing General Telephone Company of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), they contend that Richardson, an employee, is not permitted to maintain a class action on behalf of applicants whom the Sheriff did not hire.[2] We do not so read Falcon. We are persuaded that the Supreme Court did not intend that Rule 23 be administered in such a categorical fashion.
 
 
 7
 In Falcon, the Supreme Court reminded that a proposed class of persons seeking relief under Title VII must meet the requirements of Rule 23, underscoring the request that "the class claims [be] those fairly encompassed by the named plaintiff's claims." Id. at 2370. The Court found that the proposed class representative there did not meet these requirements because his complaint provided an insufficient basis for the trial court to conclude that adjudication of his claim of discrimination in promotion would require the decision of any question of law or fact common to assertedly discriminatory hiring practices. Id. at 2371.[3] The class representative was found to have not alleged sufficient facts to support an "across-the-board" attack. But the court did not translate that found deficiency to a holding that employees never can represent applicants or that an across-the-board class is never appropriate. Instead, it noted:
 
 
 8
 If petitioner used a bias testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision-making processes. In this regard it is noteworthy that Title VII prohibits discriminatory employment practices, not an abstract policy of discrimination.
 
 
 9
 Id. at 2751 n. 15 (emphasis in original).
 
 
 10
 Unlike the disapproved class representative in Falcon, we find that Richardson demonstrated a sufficient Rule 23(a) nexus to enable her to represent a class consisting of both employees and applicants. One of the Sheriff's practices that Richardson attacked involved the assignment of all new female deputies to the jail and a restriction on their transfer to more desirable sections. Because the section of the jail available for females was smaller than the male section, the Sheriff's policy by necessity limited the number of female deputies that could be employed by the Sheriff's Office. As such, both applicants and employees were adversely affected by the same practice.
 
 
 11
 While this connection between employees assigned to the jail and job applicants is plainly sufficient to support a class of both, the question remains whether Richardson at the time of class certification was a proper representative of that class. At the time of class certification Richardson no longer worked in the jail and was suing the Sheriff for not transferring her from the Civil Division. Yet, her claim involved issues of law or fact common to those of applicants and employees assigned to the jail. Evidence at the Phase I trial showed that the Sheriff's employment practices were infected by the "entirely subjective decision-making processes" recognized in Falcon as a manifestation of policy whose impact might be sufficient to connect otherwise differently situated persons. The district court found that "[t]he Sheriff's Office had no established seniority or merit system to determine eligibility for transfer of promotion. Nor did it have written guidelines for promotion or transfers. Instead, promotions and transfers were determined by the supervisors, almost all of whom were male, based largely on subjective factors." This finding demonstrates that "discrimination in its broadest sense" was not the only claim common to Richardson and the class she sought to represent. Compare Wheeler v. City of Columbus, 703 F.2d 853 (5th Cir.1983). The concerns of Falcon were met when the proof surfaced an accused employment practice that adversely affected her and the certified class of employees and applicants. See Carpenter v. Stephen F. Austin State University, 706 F.2d 608 (5th Cir.1983) (custodial workers held to be proper class representatives of clerical workers since both were affected by subjective job assignment procedures). The district court did not err in certifying this class.[4]
 
 Entitlement to Backpay
 
 12
 The Commissioners also urge that even if the class was properly certified, the five claimants did not sustain their burden of proving an entitlement to backpay. Relying on Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), they contend that they "produced credible evidence against each point on which each prevailing class member was granted an award" and that this evidence was not rebutted by the class members. We reject this argument.
 
 
 13
 This reliance upon Burdine is misplaced. The burden of proof imposed on the plaintiff in the liability phase of a Title VII class action, termed Phase I, differs from that imposed in the relief phase, termed Phase II. In this case, the district court found class wide sex discrimination in Phase I. The Commissioners do not now challenge this ruling. Instead, they argue that the individual claimants did not meet their Burdine burden of proving an entitlement to backpay. Burdine, however, does not control in Phase II. At the start of a Phase II trial the employer faces a prior adjudication of class discrimination. The procedures thereafter assume that fact and are calculated to identify the individual claimant's relationship to the condemned practices without a second trial of the issue of class discrimination. That Burdine is inapposite is plain. The individual claimant must only identify the position she was denied because of discrimination and present an estimation of the amount of requested backpay. See Teamsters v. United States, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977); Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1212-13 (5th Cir.1978) (quoting Pettway III, 494 F.2d 211, 259-60 (5th Cir.1974)). Contrary to the Commissioners' argument, the employer then has the burden of proving that the individual claimant was denied an employment opportunity for legitimate reasons. Teamsters, 431 U.S. at 362, 97 S.Ct. at 1868; Pettway, 576 F.2d at 1213.
 
 
 14
 A second problem with the Commissioners' argument is that it ignores the "clearly erroneous" standard for reviewing the district court's determination that five claimants were entitled to backpay. See Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). We have reviewed the findings in light of the Commissioners' attack but we cannot conclude that any of these findings are clearly erroneous. We turn to each in turn.
 
 
 15
 Terry Jewett --After passing the requisite tests, Jewett was told she would have to cut her hair before she would be considered for employment. She refused and was not offered a job. While defendants introduced evidence of a dress code that required short hair for all officers, they did not prove that male applicants also were required to cut their hair before being considered for employment. Jewett, in fact, testified that she would have cut her hair to the prescribed length if she had been hired.
 
 
 16
 Josie Warren --After passing the requisite tests, Warren appeared before a Review Board attended by Sheriff Thomas. Warren's unrebutted testimony was that Thomas advised her to return to her teaching job or to become a secretary. He also asked whether her husband would permit her to work rotating shifts. Finally, he warned her that she would be working in the jail with dangerous criminals and ordered her to choke and handcuff a male deputy.
 
 
 17
 Debra Pullin --Hired in 1973, Pullin worked on the court runner desk for two weeks until she was transferred. Rejecting defendants' attacks on her job performance, the district court concluded that Pullin was removed from the court runner desk because her supervisor wanted a male deputy in the position.
 
 
 18
 Carol Gassner --Hired in 1974, Gassner was removed from her position on the court runner desk in 1975, was removed from a position at Parkland Hospital in 1976 because she was three months pregnant, was not allowed to adjust her midnight shift to secure child care, and was denied a transfer to the Warrant Division in 1978. Defendants offered proof that Gassner was a "continual complainer" but were otherwise unable to show that their employment decisions were unrelated to her sex.
 
 
 19
 Marsha Richardson --The court's finding that Richardson was discriminatorily denied a transfer to an outside district is not clearly erroneous. The supporting evidence included testimony that Sheriff Jones believed it was good public relations to have a "pretty woman" working in the downtown district.
 
 
 20
 Backing away from their attack against the successful claimants, the Commissioners suggest that because they adopted an affirmative action plan, any discriminatory employment decision by the Sheriff could not be the official policy or custom of Dallas County and that they thus cannot be held liable under Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This argument is without merit. Monell identifies when a municipality may be held liable under 42 U.S.C. Sec. 1983; it has no bearing on whether the Commissioners are "employers" under Title VII and thus liable for the Sheriff's employment practices. The Commissioners do not now challenge the district court's conclusion that they are "employers" under Title VII.
 
 Attorneys' Fees
 
 21
 The Commissioners launch three attacks against the court's award of attorneys' fees of Richardson and Gassner. First, they claim that the award should be reduced by eliminating compensation for work expended on unsuccessful claims, which included a harassment charge by Richardson and the backpay awards sought by all but five of the class members. The Supreme Court recently addressed this issue in Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), holding that a district court must address two questions in determining whether a partially prevailing plaintiff may recover attorneys' fees for legal services on unsuccessful claims: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Id. at ----, 103 S.Ct. at 1940. While noting that the district court there had properly resolved the first inquiry in favor of the plaintiffs, the Court vacated the fee award "because the District Court's opinion did not properly consider the relationship between the extent of success and the amount of the fee award." Id. at ----, 103 S.Ct. at 1942 (footnote omitted). More specifically,
 
 
 22
 [t]he court's finding that "the [significant] extent of the relief clearly justifies the award of a reasonable attorney's fee" does not answer the question of what is "reasonable" in light of that level of success. We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.
 
 
 23
 Id. (footnote omitted).
 
 
 24
 Though we acknowledge the district court's discretion in determining a proper fee award, we are mindful of the Supreme Court's admonition that "[t]his discretion ... must be exercised in light of the considerations" identified in Hensley. Id. at ----, 103 S.Ct. at 1941. The district court here answered the first question posed by Hensley, holding that "the hours expended [by the lawyers] were necessary in the prosecution of this action on behalf of their clients, except for 19 hours expended ... in an unsuccessful attempt to have Pullin's 5 day suspension in August 1980 set aside, and except for 20.3 hours expended ... in an unsuccessful effort to have Gassner reinstated...." Nevertheless, like the district court in Hensley, the court below "did not properly consider the relationship between the extent of success and the amount of the fee award." Thus, we vacate the fee award and remand to provide the court an opportunity to resolve the second Hensley inquiry.[5]
 
 
 25
 Despite this disposition, we address the Commissioners' remaining contentions now in the interest of judicial economy. First, the Commissioners assert that the attorneys' fees sought by Gassner's lawyer should not be awarded because Gassner already was represented by class counsel. The record, however, does not support this charge of duplication. Gassner obtained her own lawyer to contest her July 23, 1980 discharge. After the lawyer began work on July 29, the class counsel did no more work on Gassner's behalf. The district court thus did not err in awarding attorneys' fees to Gassner's lawyer.
 
 
 26
 The Commissioners' final attack is against the district court's award of attorneys' fees to three paralegals. Initially, the court refused to make such an award because the class had not shown that any of the paralegals had performed work "that has traditionally been done by an attorney." See Jones v. Armstrong Cork Co., 630 F.2d 324, 325 & n. 1 (5th Cir.1980). It then reopened the evidence and awarded fees to three paralegals in amounts ranging from $30 to $50 per hour. The Commissioners now contend that the paralegals were not entitled to these awards because: (1) they were not performing the work of attorneys; and (2) they were being paid less than $30-$50 per hour. Both arguments are without merit. The record shows that the three paralegals assisted the lawyers at trial, organized and reviewed class members' claims, participated in telephone conferences with lawyers, witnesses, and class members, and performed complex statistical work. The district court carefully determined what portion of this work could have been performed by secretarial personnel and then awarded attorneys' fees for the remaining portion. We cannot conclude that the court clearly erred in finding that that portion represented work traditionally performed by attorneys. In light of the paralegals' expertise, the court also did not abuse its discretion in assigning an hourly value to the work hours rather than allowing reimbursement for salaries paid. See Jones v. Armstrong Cork Co., 630 F.2d at 325 n. 1. Nevertheless, we note that this award also must be reconsidered in light of Hensley.
 
 Richardson's Cross-Appeal
 
 27
 The district court awarded Richardson transportation and parking expenses but refused to compensate her for the loss of personal use of an official county automobile that is assigned to deputies in outside districts. The court reasoned that any personal use of an official car would have contravened the official policies of the Sheriff's Office. Richardson then moved to amend the finding of facts, arguing that this policy did not become official until one year after her resignation in May, 1975. The court denied this motion on the ground that the same policy had existed since at least 1973. Richardson now cross-appeals, contending that the court's finding of an official policy from 1973-75 is clearly erroneous in light of Sheriff Jones's testimony that reasonable personal use was permitted.
 
 
 28
 Despite Sheriff Jones's somewhat ambiguous deposition testimony, two veteran deputies, Charles Player and James Grandstaff, testified that the Sheriff's Office had long prohibited the personal use of county cars and these cars were not given to deputies to supplement their salaries. Based on this testimony, we cannot conclude that the district court here clearly erred.
 
 Gassner's Claim
 
 29
 The district court rejected Gassner's claim that she was discharged in retaliation for her sex discrimination suit, ruling that the reason for her discharge was her refusal to cooperate with an investigation regarding a stolen rifle. She now argues that the district court should have applied Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) to her retaliatory discharge claim, thus affording her a "presumption" that the discharge was improperly motivated.
 
 
 30
 We do not reach the merits of this claim because we find that it is not properly before us. On May 14, 1982, Gassner filed notice of her cross-appeal. One month later, this court granted defendants' motion to dismiss the cross-appeal as untimely filed. Despite this ruling, Gassner filed a brief reiterating the class's positions and raising this claim for additional relief. The Commissioners moved to strike that portion of the brief. In response, Gassner argues that Richardson's cross-appeal was timely filed on behalf of the entire class. We disagree. Richardson's notice of cross-appeal was filed on her own behalf.[6] Absent a timely cross-appeal, Gassner's request for additional relief thus is not before us.
 
 
 31
 For the reasons stated above, we affirm the judgment in all respects but remand for reconsideration of the attorneys' fee award in light of Hensley v. Eckerhart.
 
 
 32
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 
 [1]
 Carl Thomas replaced Clarence Jones as Sheriff in January, 1977. Don Byrd replaced Thomas in January, 1981
 
 
 [2]
 We reject the class's argument that the Commissioners did not raise this argument below. In a March 7, 1980 motion, the Commissioners argued that "[t]he Court erred in defining the class the plaintiff sought to represent by including applicants as part of the class when the Complaint limits the class sought to be represented to female deputies."
 
 
 [3]
 While the Court relied on the class representative's complaint to determine the proper scope of the class, the facts relevant to this determination may emerge from other sources. In Falcon, the complaint provided the only basis for this determination because the district court had certified the class without conducting an evidentiary hearing
 
 
 [4]
 The Commissioners also seem to argue that the class claim is barred because of Richardson's failure to complain to the EEOC of classwide discrimination. We recently rejected this argument in Fellows v. Universal Restaurants, 701 F.2d 447, 451-52 (5th Cir.1983), holding that a class action may be based upon an EEOC complaint of individual discrimination as long as an "EEOC investigation of class discrimination against women could reasonably be expected to grow out of [the] allegations in [the] initial EEOC charge." The Commissioners have made no showing that such an investigation could not have grown out of Richardson's EEOC charge
 
 
 [5]
 In doing so we do not suggest that the able district court misapplied the law as it then existed. This is a post-decision development
 
 
 [6]
 Richardson's notice of cross-appeal states: "Notice is hereby given that Plaintiff Marsha A. Richardson hereby files her cross-appeal to the United States Court of Appeals for the Fifth Circuit from the judgment entered on April 6, 1982, in the above referenced cause."