736 F.2d 160
 35 Fair Empl.Prac.Cas. 345,
34 Empl. Prac. Dec. P 34,530, 39 Fed.R.Serv.2d 670
 Joan Rance VUYANICH, Plaintiff-Appellee Cross-Appellant,
and
Marisu Fenton, Intervenor-Appellee,
Marjorie Lee Jackson and Dorothy Hooks, Intervenors-Appellants,
and
Portia Williams and Martha Davis, Movants-Appellants,
v.
REPUBLIC NATIONAL BANK OF DALLAS, Defendant-Appellant
Cross-Appellee.
Ellen JOHNSON, Plaintiff-Appellee Cross-Appellant,
v.
REPUBLIC NATIONAL BANK OF DALLAS, Defendant-Appellant Cross-Appellee.
 No. 81-1357.
 United States Court of Appeals,
Fifth Circuit.
 July 12, 1984.
 
 Donald W. Anderson, Chicago, Ill., Bishop, Liberman, Cook, Purcell & Reynolds, Bruce L. Downey, Richard K. Walker, C. Dennis Ahearn, Wayne S. Bishop, Washington, D.C., for Republic.
 Joann Peters, Dallas, Tex., for Vuyanich, Jackson, Hooks, Williams and Davis.
 Linda N. Coffee, Dallas, Tex., for Johnson.
 Richard L. Arnold, Dallas, Tex., for Fenton.
 Appeals from the United States District Court for the Northern District of Texas.
 ON SUGGESTIONS FOR REHEARING EN BANC
 (Opinion 01/30/84, 5 Cir., 1984, 723 F.2d 1195)
 Before CLARK, Chief Judge, GARZA and POLITZ, Circuit Judges.
 PER CURIAM:
 
 
 1
 Treating the suggestions for rehearing en banc as petitions for panel rehearing, the petitions for panel rehearing are DENIED. The judges in regular active service of this Court having been polled at the request of one of said judges and a majority of said judges not having voted in favor of it (Federal Rules of Appellate Procedure and Local Rule 35), the suggestions for Rehearing En Banc are DENIED.
 
 
 2
 Before CLARK, Chief Judge, BROWN, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and DAVIS, Circuit Judges.*
 
 
 3
 ALVIN B. RUBIN and TATE, Circuit Judges, with whom JOHN R. BROWN, RANDALL and JERRE S. WILLIAMS, Circuit Judges, join, dissenting.
 
 
 4
 Justice withers on time's vine. These two sex and race discrimination suits, now consolidated, were filed in 1973. Discovery was extensive. The district court wrote five opinions. The trial lasted 28 days. The district court, 505 F.Supp. 224, found, on the merits, in a lengthy and well-reasoned opinion that the Republic National Bank had discriminated against some of its black and female employees. Now, eleven years after the litigation began and fifteen years after the discriminatory practices occurred, it is remanded, not for error on the merits, but "to reconsider the determination of classes ... and to proceed to adjudicate the rights of the parties." 732 F.2d at 1202. We respectfully dissent from the refusal to grant rehearing en banc both because of the application of hindsight that further delays the conclusion of this ancient case and because we differ with the theory of class certification adopted by the panel.
 
 
 5
 The Bank has approximately 2,000 employees, of whom about 500 are officers. At the time the EEOC charges were filed, eight percent of the Bank's work force was black but every single one of its officers was white. Fifty-eight percent of the Bank's employees were female, but every one of its officers was male. In 1976, twelve years after Title VII was enacted, only three blacks were officers; although sixty percent of the employees were by then female, only fifty females had become officers, making up ten percent of the officer complement.
 
 
 6
 Time will soon have erased all but faint memories of the events that occurred fifteen years ago. Before the district court is able to reconsider the case, its decision is again appealed, and the appeal is heard by yet another panel of this court, two or three more years will have elapsed. By that time many of those originally affected will likely have been succeeded by their heirs. Such delay would be necessary if the trial judge had been in error on the merits, but the merits of his decision are not questioned. Indeed, even the procedural decisions made by the district court carefully followed precedent prevailing at the time they were made.
 
 
 7
 The panel decision does not end the litigation between the Bank and persons now found to have been included in the class erroneously. The class certification, even if erroneous, tolled the statute of limitations for all persons in the designated class and its subclasses. Barrett v. United States Civil Service Commission, 439 F.Supp. 216 (D.D.C.1977); see also American Pipe and Construction Co. v. Utah, 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) ("commencement of the original class action tolls the statute for all purported members of the class") (emphasis added). Therefore, the dismissal of all "class claims affecting compensation, promotion, placement, and maternity, as well as race discrimination in hiring," does not terminate those claims. Representatives satisfying even the panel's stringent requirements likely will be found. A new suit will start the legal course.
 
 
 8
 The fulcrum upon which the panel decision turns is the EEOC complaints filed by the two initial class action plaintiffs: one black woman charged race discrimination, alleging that the Bank refused to transfer and later discharged her because she had married a white man; another black woman charged race and sex discrimination, based upon the Bank's rejection of her applications first for a supervisory and then for any position.
 
 
 9
 The panel held that the district court's across-the-board theory of class certification had been rejected by the Supreme Court's subsequent decision in Falcon. General Telephone Company v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). We submit that the panel expanded Falcon beyond its intended scope. The Falcon court specifically indicated, in a footnote quoted by the panel, that, if the same biased employment selection devices affect all members of a putative class, one representative may appropriately advance claims of all those so affected, even though she is not individually affected by some of the particulars of the across-the-board discrimination. 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15. We have interpreted Falcon to hold that "allegations of similar discriminatory employment practices, such as a biased testing procedure to evaluate incumbent employees and applicants, or use of entirely subjective personnel processes that operated to discriminate, would satisfy the commonality and typicality requirements of Rule 23(a)." Carpenter v. Stephen F. Austin State University, 706 F.2d 608, 617 (5th Cir.1983). In another post-Falcon decision, we held that subjective decision-making might be a "general policy of discrimination" that, in Falcon's words, "could justify a class of both applicants and employees." Richardson v. Byrd, 709 F.2d 1016 (5th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Such discrimination might manifest "itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision-making processes." Id. Cf. Page v. U.S. Industries, Inc., 726 F.2d 1038, 1046 (5th Cir.1984) (holding disparate impact analysis applicable to examine the class-wide impact of a "subjective promotional system").
 
 
 10
 The panel sought to distinguish Carpenter and Richardson because in those cases significant proof of subjective discrimination was found, and "such proof was not present here." At 1199. Respectfully, we read the district court opinion differently: the district court said that the Bank had "chosen to rely on two objective inputs into its subjective hiring process as those which exert the greatest influence on its hiring decisions: education ... and experience." But the district court found that the Bank's selection criteria for hiring were flexible and that it had "no formal degree requirements for any of its jobs." Vuyanich v. Republic National Bank of Dallas, 505 F.Supp. 224, 373 (N.D.Tex.1980). The district court also found that "the decision to hire a managerial or professional employee is necessarily subjective." Id. at 371. Thus, the finding that the Bank relied heavily on the criteria of education and experience does not foreclose the conclusion that the Bank employed a "general policy of discrimination."
 
 
 11
 We have never required that a plaintiff prove the complete absence of objective criteria to establish the existence of a discriminatory policy. In Richardson, we held the Falcon exception applicable because transfer and promotion decisions were "based largely on subjective factors." 709 F.2d at 1020 (emphasis added). In Carpenter, we allowed custodial workers to represent a class that included clerical workers because the same "subjective" employment practices applied to both groups. The "subjective" practices at issue in Carpenter were similar to those complained of in this case: supervisors made employment and transfer decisions without any objective criteria beyond a description of the duties, education qualifications, and work experience of the person then holding the position to be filled. 706 F.2d at 614-15, 617.
 
 
 12
 Moreover, an employer should not be able to stop certification of a class-action discrimination suit in its tracks by simply alleging that hiring is based on "objective" qualifications of "education" and "experience." The court must look at how these professed criteria are actually applied. To take an extreme example, suppose it is a genuine occupational requirement that an applicant have a college degree; fifty white applicants and one hundred black applicants, all with college degrees, apply for fifty positions, but the fifty positions are filled entirely by whites. The "objective" requirement of a college degree does not eliminate the inference that discrimination occurred, an inference that might be rebutted but is not to be defeated by mere allegation.
 
 
 13
 Here, evidence was adduced and this evidence proved, to the district court's satisfaction, that the low proportion of blacks and women in officer positions did not result from education and experience requirements. Even though this evidence was introduced at the trial on the merits, rather than at the time of class certification, we should not now put on our appellate blinders and ignore it. Had the evidence been profferred before certification, it should have been admissible to determine the propriety of certification.
 
 
 14
 The panel opinion erases eleven years of litigation to return the litigants to square one. It undermines Falcon's reservation for broad class certification. Law so administered sets litigants into a maze that cannot end with justice.
 
 
 15
 We respectfully dissent.
 
 
 
 *
 Judge Higginbotham recused