# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 10, 2013   Decided April 12, 2013

No. 11-7153

DL, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION, ET AL.,
APPELLANTS

Consolidated with No. 12-7042

Appeals from the United States District Court
for the District of Columbia
(No. 1:05-cv-01437)

*Todd S. Kim*, Solicitor General, Office of the Attorney General for the District of Columbia, argued the cause for appellants. With him on the briefs were *Irvin B. Nathan*, Attorney General, and *Donna M. Murasky*, Deputy Solicitor General. *Mary L. Wilson*, Assistant Attorney General, entered an appearance.

*Bruce J. Terris* argued the cause for appellees. With him on the brief were *Jeffrey S. Gutman*, *Cyrus Mehri*, *Jane M. Liu*, and *Margaret A. Kohn*.

*Kelly Bagby*, *Daniel Kohrman*, *Michael Shuster*, *Ira A. Burnim*, *Joseph B. Espo*, and *Sharon Krevor-Weisbaum*, were on the brief for *amici curiae* AARP, et al. in support of appellees.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Senior Judge* EDWARDS.

ROGERS, *Circuit Judge*: The District of Columbia appeals from the structural injunction entered by the district court in this class action challenging the policies and practices of the District's "Child Find" system under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. It principally contends that the class certification pursuant to Federal Rule of Civil Procedure 23(a)(2) was improper as a matter of law, and that the district court lacked discretion to award systemic relief, or at least acted impermissibly in the absence of an explanation of how it bridged the gap between individual relief and the systemic relief ordered. In view of the clarification in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), of the requirements of Rule 23(a)(2), we vacate the class certification order, and consequently the liability and remedial orders, and we remand the case for the district court to reconsider whether a class, classes, or subclasses may be certified and if so, thereafter to redetermine liability and appropriate relief.

**I.**

The IDEA provides federal funds to assist States and local agencies in educating children with disabilities "and conditions such funding upon a State's compliance with extensive goals and

procedures." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295-96 (2006) (quoting *Board of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 179 (1982)). A "State" is defined to include the District of Columbia. 20 U.S.C. § 1401(31). One of the primary purposes of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education." *See id.* § 1400(d)(1)(A); *Alegria v. Dist. of Columbia*, 391 F.3d 262, 263 (D.C. Cir. 2004). The IDEA conditions the receipt of federal funding on there being "in effect policies and procedures to ensure" that all children residing therein between the ages of 3 and 21 have access to a "free appropriate public education" ("FAPE"). *See* 20 U.S.C. § 1412(a)(1)(A). A principal means of fulfilling this obligation is to establish a "Child Find" program under which children with disabilities in need of special education "are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services." *Id.* § 1412(a)(3)(A). This includes ensuring that "[c]hildren participating in early intervention programs . . . , and who will participate in preschool programs . . . experience a smooth and effective transition . . . ." *Id*. § 1412(a)(9).

The IDEA provides that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title." *Id.* § 1412(a)(6). Section 1415 provides that there shall be "an opportunity for any party to present a complaint - (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." *Id.* § 1415(b)(6)(A). Upon exhausting administrative remedies, "any party aggrieved by the findings and decision made . . . shall have the right to bring a civil action with respect to the complaint presented." *Id.* § 1415(i)(2)(A). A court — after evaluating the

"records of the administrative proceedings," "hearing additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence" — "shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). The Secretary of Education annually reviews the performance plan of a State on the conditions set forth in § 1412 and may withhold or recover funds upon finding poor performance of the IDEA obligations. *See generally id.* § 1416.

In July 2005, six named plaintiffs, on behalf of themselves and others similarly situated, sued the District of Columbia government and the D.C. Superintendent of Public Schools (hereinafter, "the District"), pursuant to 42 U.S.C. § 1983. They identified themselves in terms of their own experiences at various stages of the IDEA Child Find and FAPE process, *see* Am. Compl. ¶¶ 5–76, and alleged that the District's "actions amount to a policy, pattern, practice or custom that violates federal law and shows deliberate indifference to plaintiffs' federal rights," *id.* ¶ 109. Specifically, they alleged that the District's policies and practices had resulted in systemic failures to identify, locate, evaluate, and offer special education and related services to disabled preschool-age children, in violation of the IDEA, 20 U.S.C. § 1412(a), § 504 of the Rehabilitation Act,[1] federal and District of Columbia regulations implementing

---

[1] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see Alexander v. Choate*, 469 U.S. 287, 295 (1985); *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 412–13 (1979); *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008).

the IDEA,[2] and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Am. Compl. ¶¶ 1, 109. As relief, they requested certification of a specified class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure; a declaratory judgment that the District had violated federal and District of Columbia law, including the IDEA, by failing to identify, locate, evaluate and offer a FAPE to eligible children and to ensure a smooth and effective transition from early intervention to preschool programs; and preliminary and permanent injunctions ordering the District to "develop and implement adequate and effective policies and procedures and a practical method of identifying, locating and evaluating plaintiffs for special education and related services." *Id*. at 33–34. They also sought, among other things, orders enjoining the District to provide "compensatory education to the plaintiffs whom defendants failed to identify, locate, evaluate or offer special education and related services when they were between three and five years old, inclusive," and to provide reimbursement of privately expended funds for these services, as well as the appointment of a special master. *Id.* at 35.

In August 2006, the district court certified the specified class pursuant to Rule 23(a) and 23(b)(2).[3] *See D.L. v. Dist. of*

---

[2] Plaintiffs cited, for example, 34 C.F.R. §§ 104.32-104.39 as well as 5-E D.C.M.R. § 3002.1(a) (requiring the District to "make a [FAPE] available to each child with a disability, ages three to twenty-two, who resides in, or is a ward of, the District") and § 3002.1(d) (requiring the District to "ensure that procedures are implemented" to comply with the "Child Find" program "regardless of the nature or severity of the[] [children's] disabilities"). *See also* 5-E D.C.M.R. § 3000 *et seq.*

[3] Rule 23 of the Federal Rules of Civil Procedure provides, in relevant part:

*Columbia*, 237 F.R.D. 319 (D.D.C. 2006).  The certified class was defined as:

> All children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate, or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not

---

> (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b), "Types of Class Actions," provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . .

>> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.
>> * * * *

identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

*Id.* at 321. The district court found that the Rule 23(a) commonality requirement was met because "plaintiffs . . . have a common injury, namely the denial of a FAPE under the IDEA," and all "allege that defendants have violated the Child Find requirement." *Id.* at 322. Regarding Rule 23(a) typicality, the district court found that the "named plaintiffs were injured by the same alleged systemic pattern of IDEA violations that allegedly injured the other class members, and that the named plaintiffs' injury [was] typical of the other class members' injuries." *Id.* The plaintiffs had, the court explained, "pointed to practices which, if proven, constitute a pervasive pattern and practice of failing to identify, locate, evaluate and offer them services and that defendants lack an adequate Child Find system," allegations that were "sufficient to satisfy the Rule 23(b)(2) requirement." *Id.* at 324.

In 2010, following lengthy discovery, *see generally D.L. v. Dist. of Columbia*, 274 F.R.D. 320, 322–24 (D.D.C. 2011), the district court granted in part the District's motion for summary judgment, ruling that the plaintiffs could not proceed under 42 U.S.C. § 1983 to enforce the IDEA and rejecting the plaintiffs' argument "that the IDEA does not provide the full relief they are requesting."[4] *D.L. v. Dist. of Columbia*, 730 F. Supp. 2d 84, 92

---

[4] The district court had previously denied the District's motions to dismiss plaintiffs' IDEA claims for failure to exhaust administrative remedies, finding this requirement excused or, in the alternative, already met, *D.L. v. Dist. of Columbia*, 450 F. Supp. 2d 11, 17–19 & 18 n.2 (D.D.C. 2006) (citing *Hartman v. Duffey*, 88 F.3d 1232, 1235 (D.C. Cir. 1996)), and for failure to allege disparate treatment solely due to their disabilities for purposes of the

(D.D.C. 2010).  The district court concluded that a "successful civil action directly under the IDEA . . . will have the same effect as a § 1983 action," and elected to "construe the First Claim of plaintiffs' Amended Complaint to state a cause of action directly under § 1415(i)(2)(A) of the IDEA." *Id.* at 92-93.  The district court also granted the plaintiffs' motion for partial summary judgment as to liability under the IDEA, the Rehabilitation Act, and District of Columbia law.  *See id.* at 94-95, 99–100.  Upon reviewing data through 2007, the district court found that the District had denied a FAPE to a large number of children aged 3 to 5 years old in violation of IDEA § 1412(a)(1)(A), *id.* at 95; failed to comply with its Child Find obligations under § 1412(a)(3)(A), *id.* at 96-97; and failed to provide children with a smooth and effective transition under § 1412(a)(9), *id.* at 97-98.  The district court proceeded in April 2011 to address liability from 2008 onward.  *Id.* at 101.  That month, the District moved to decertify the class.

Before further rulings by the district court, the Supreme Court in June 2011 issued *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541.  The District filed a supplemental memorandum of law to its motion to decertify the class in July, arguing, in part, that the plaintiffs' claims were too broad to establish commonality under Rule 23(a) as required by *Wal-Mart*.  In August, the plaintiffs filed a motion for class re-certification and for leave to file their second amended complaint.  They proposed to amend the class certification to add four subclasses, consisting of children whom the District failed: (1) to identify or locate for services; (2) to provide with a timely initial evaluation; (3) to

---

Rehabilitation Act, finding the plaintiffs had "alleged sufficient facts to make a prima facie showing that defendants have 'departed grossly' from accepted Child Find practice and standards," which was sufficient to meet the Rehabilitation Act pleading standards, *D.L. v. Dist. of Columbia*, 450 F. Supp. 2d 21, 23–24 (D.D.C. 2006).

provide with a timely eligibility determination; or (4) to provide with a "smooth and effective" transition from early intervention to preschool programs. The plaintiffs also sought a hybrid certification of their declaratory and injunctive claims under Rule 23(b)(2) and their individual claims for compensatory education and reimbursement under Rule 23(b)(3).

The district court denied the District's motion to decertify the class and granted re-certification of the plaintiffs' claims for reimbursement and compensatory education under Rule 23(b)(3). *D.L. v. Dist. of Columbia*, 277 F.R.D. 38, 40-41 (D.D.C. 2011). In denying the District's motion, the district court found, as relevant, that the plaintiffs had "amply demonstrated there are questions of law and fact common to the class," all members of which "suffered the same injury: denial of their statutory right to a free appropriate public education." *Id.* at 45. It explained that the "differing allegations only represent the differing ways in which the [District] ha[s] caused class members' common injury." *Id.* It identified the common question — the crux of plaintiffs' claim — to be whether class members received a FAPE, and stated this issue was susceptible to classwide proof. *See id.* at 45-46. It found the "glue" binding together the various reasons why individual class members were denied a FAPE to be the "systemic failures" within the District's education system, stating the "[p]laintiffs presented credible evidence of [the District's] ineffective policies and practices, which persisted for years without leading to any significant increase in the number of preschool-age children receiving a FAPE." *Id.* at 46. Regarding typicality, the district court's reasons for concluding Rule 23(a)(3) was satisfied were similar to its determination in initially certifying the class. *See id.* The district court accordingly deemed moot the plaintiffs' motion to recertify the class using subclasses. *See id.* at 47.

Thereafter, upon extending its finding of liability to the District's actions from 2008 to April 2011, *D.L. v. Dist. of Columbia*, 845 F. Supp. 2d 1, 6 (D.D.C. 2011), the district court enjoined the District from further violations of the IDEA, § 504 of the Rehabilitation Act, and District of Columbia law, and issued a structural injunction, *see id.* at 25-34. The injunction included programmatic requirements and numerical goals that would remain in effect until the District demonstrated sustained compliance.[5] *See id.* The District appeals.

## II.

In *Wal-Mart*, the Supreme Court instructed that under Rule 23(a)(2), the plaintiffs' "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S. Ct. at 2551. "This does not mean merely that [class members] have all suffered a violation of the same provision of law," for "[w]hat matters to class certification . . . is not the raising of common 'questions,' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted) (emphasis in original). Likewise, Rule 23(b)(2) allows class treatment "only when a single injunction or declaratory judgment would provide relief

---

[5] Specifically, such compliance "shall begin after [the District], during a single year ('the baseline year'), meet[s] or exceed[s] all three numerical requirements" and concludes within two or three years if certain additional conditions are met. *D.L. v. Dist. of Columbia*, 845 F. Supp. 2d at 29. But "if [the District] fail[s] to meet any of the numerical requirements . . . defendants must establish a new baseline year of compliance before being able to show sustained compliance." *Id.*

to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* at 2557 (emphasis in original). The Court explained that "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (internal quotation marks omitted). The Court noted that the district court must conduct a "rigorous" class-certification analysis, *id.* at 2551 (quoting *Gen. Tel. Co. of. Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)), which may "entail some overlap with the merits of the plaintiff's underlying claim," *id*. The Court has since cautioned that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013); *see also Comcast Corp. v. Behrend*, 569 U.S. __ (2013), slip op. at 6 (March 27, 2013).

The District contends that the class certified by the district court lacks commonality as a matter of law, and that this court should vacate the certification, liability, and relief rulings. Not to make too subtle a point, the District's position is that "[a]lthough loosely focused on one general 'child find' system, the certified class reaches across different legal requirements applicable to different actors in different agencies at different points of time to children with different disabilities in different factual settings." Appellant's Br. at 28. It views the certified class to "cover[] failures in four distinct administrative functions: (1) identification of a child as one potentially needing services,

(2) location of that child, (3) evaluation for potential services, and (4) if necessary, provision of services." *Id*. at 29.  In other words, to it "the class definition itself makes plain that named plaintiffs here attempt to amalgamate multiple, distinct categories of claims." *Id.* at 28. The class members may suffer from the same violation of law, as the district court found, but, the District urges, there is no common contention whose determination "will resolve an issue . . . central to the validity of each one of the claims in one stroke." *Id.* at 29 (quoting *Wal-Mart*, 131 S. Ct. at 2551).  The plaintiffs contest the District's understanding of *Wal-Mart*'s interpretation of the commonality requirement, maintaining that a pattern or practice of Child Find violations, as here, does affect all class members because the District's systemic failures result in the failures to identify, locate, evaluate and provide special education services to large numbers of disabled preschool-aged children, regardless of the factual circumstances of the individual children who suffered Child Find violations.  Their challenge to the District's systemwide conduct, they maintain, can be resolved by a single determination.

After *Wal-Mart* it is clear that defining the class by reference to the District's pattern and practice of failing to provide FAPEs speaks too broadly because it constitutes only an allegation that the class members "have all suffered a violation of the same provision of law," which the Supreme Court has now instructed is insufficient to establish commonality given that the same provision of law "can be violated in many different ways."  *Wal-Mart*, 131 S. Ct. at 2551.  In the absence of identification of a policy or practice that affects all members of the class in the manner *Wal-Mart* requires, the district court's analysis is not faithful to the Court's interpretation of Rule 23(a) commonality.

In certifying the class, the district court deemed the plaintiffs' pattern and practice claims sufficient to meet Rule 23(a)'s prerequisite of commonality. *See D.L. v. Dist. of Columbia*, 237 F.R.D. at 322; *D.L. v. Dist. of Columbia*, 277 F.R.D. at 45. Likely so prior to *Wal-Mart*. *See, e.g.*, *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 60 (3d Cir. 1994). But *Wal-Mart*'s interpretation of Rule 23(a)(2) has changed the landscape, as our sister circuits have acknowledged. *See Arlington Video Prodns., Inc. v. Fifth Third Bancorp*, 2013 WL 560635 at *14 (6th Cir. Feb. 14, 2012); *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 376–77 (8th Cir. 2013); *In re Countrywide Fin. Corp.*, 708 F.3d 704, 709 (6th Cir. 2013); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013); *M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 487 (7th Cir.), *cert. denied*, 133 S. Ct. 338 (2012); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012). In *Wal-Mart*, the Court explained that where the defendant is alleged to have

> engage[d] in a *pattern or practice* of discrimination . . . in resolving an individual's Title VII claim, the crux of the inquiry is the reason for a particular employment decision. * * * Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

*Id.* at 2552 (internal citations omitted) (emphasis in original). The broad class certified by the district court does not satisfy Rule 23(a)(2)'s requirement for commonality.

The circuit courts of appeals to address the question have hewed faithfully to *Wal-Mart*'s "one stroke" requirement. For

example, in *McReynolds*, the Seventh Circuit held on interlocutory appeal that a putative class of African American employees who alleged that their employer's company-wide "teaming" and "account distribution" practices had a disparate impact on their advancement within the company, in violation of Title VII and 42 U.S.C. § 1981, was "not forbidden by the *Wal-Mart* decision." 672 F.3d at 490. In *Wal-Mart* the Supreme Court acknowledged that "'in appropriate cases,' giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory," 131 S. Ct. at 2554 (citation omitted), where commonality could be satisfied by "'[s]ignificant proof that an employer operated under a general policy of discrimination . . . if the discrimination manifested itself in hiring and promotion practices in the same general fashion,'" *id*. at 2553 (quoting *Falcon*, 457 U.S. at 159 n.15). Although in *McReynolds* "each class member would have to prove that his compensation had been adversely affected by the corporate policies, and by how much," the Seventh Circuit emphasized that a class action on disparate impact meant that "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful." *McReynolds,* 672 F.3d at 491. The pututative class in *McReynolds* was appropriate post-*Wal-Mart* because the economic harm alleged by each class member was the result of the same corporate-wide policies and if the polices were held unlawful then a question central to the validity of each class member's claim would be resolved in one stroke. *See id.* at 488–90; *see also Floyd v. City of New York*, 283 F.R.D. 153, 173 (S.D.N.Y 2012).

In contrast, the harms alleged to have been suffered by the plaintiffs here involve different policies and practices at different stages of the District's Child Find and FAPE process; the district court identified no single or uniform policy or practice that bridges all their claims. When faced with a similar IDEA lawsuit, the Seventh Circuit in *Jamie S.*, 668 F.3d at

497–98, effectively rejected, in view of a broadly defined class, the attempt to distinguish *Wal-Mart*'s interpretation of Rule 23(a) commonality in the context of a pattern and practice claim. We do not suggest that widespread policies and practices in violation of the IDEA could never satisfy Rule 23(a)(2)'s commonality requirement after *Wal-Mart*, *see Jamie S.*, 668 F.3d at 503–05 (Rovner, J., concurring in part and dissenting in part), but rather that, in view of *Wal-Mart*'s interpretation of Rule 23(a)(2) commonality and the broadly certified class, as in *Jamie S.* "[t]he plaintiffs' claims appear to be based on multiple, disparate failures to comply with the [District's] statutory child find obligations rather than a truly systemic policy or practice which affects them all," *id.* at 504–05.  For some plaintiffs, for example, the alleged harm suffered is due to the failure of the District to have an effective intake and referral process; for others the alleged harm is caused by the District's failure to offer adequate and timely education placements to implement individual education plans ("IEPs"); for still others, the cause is the absence of a smooth and effective transition from early intervention programs to preschool programs.  Although the district court found that all members of the class are harmed as a result of the systemic deficiencies due to the District's failure to establish the required Child Find program and FAPE practices and policies, what common "tru[e] or fals[e]" question can be answered for each of these three different claims of harm that would assist the district court in determining the District's liability as to each group?  *Wal-Mart* instructs that holding that the District has violated the IDEA as to each class member is not enough to establish Rule 23(a) commonality, 131 S. Ct at 2551, in the absence of a uniform policy or practice that affects all class members.

Again, none of this is to suggest that a class can never be certified in this kind of case.  Rule 23(a)(2) does not require that all questions be common to the class.  Rather, as noted, the

Supreme Court acknowledged that "'even a single common question' will do," *id.* at 2556 (internal citation and brackets omitted), as long as its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke," *id.* at 2551. Likewise, although Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class," *id.* at 2558, the Rule does not bar courts from granting further equitable relief that does not reach every plaintiff in the case. But given *Wal-Mart*'s interpretation of Rule 23(a) commonality, the requested relief must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member.

The plaintiffs appeared to recognize the problem with the currently certified class when, after *Wal-Mart* was issued, they moved to add four subclasses consisting of children whom the District failed to: (1) identify or locate for services; (2) provide with a timely initial evaluation; (3) provide with a timely eligibility determination; or (4) provide with a "smooth and effective" transition from Part C to Part B. *See* Plaintiffs' Mem. of Law in Support of Their Mot. for Class Re-Certification. In effect, the plaintiffs were suggesting that they could show as to each subclass that the harm caused by the District's failures stemmed from a policy or practice that would provide a basis for the requested injunctive and declaratory relief. The district court never reached this question. Nor do we. One circuit has suggested, however, that the district court's certification of subclasses might resolve the Rule 23(a)(2) problem. *See M.D.*, 675 F.3d at 848 (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 378–79 (2d Cir. 1997) (stating that "[o]ne possible method of developing proper subclasses would divide the present class based on the commonality of the children's particular circumstances, the type of harm the children allegedly have suffered, and the particular systemic failures which the plaintiffs assert have occurred")).

Although they disagree with the District's interpretation of the commonality requirement, the plaintiffs have urged that "if," in view of *Wal-Mart*, "this Court finds that plaintiffs' class lacks commonality, remand to the district court to reconsider subclasses would be appropriate." Appellees' Br. at 46. The District "agrees that [the plaintiffs] should have this opportunity, and that this Court need not consider the subclasses they proposed," although it "doubts [that even] they comply with *Wal-Mart*." Reply Br. at 25. We agree that a remand is appropriate so the district court can determine whether subclasses would meet the requirements of Rule 23(a) commonality after *Wal-Mart*. We understand the District to take no issue with the district court's ruling that the IDEA is amenable to class actions. *See* Oral Arg. Jan. 10, 2013 Tr. at 5, 20, 59. The District has focused on how *Wal-Mart* appears to have changed the law to require that one injunction address the common harms identified by all the children in the class or subclass, and on the fact that the district court did not find there was any particular policy or practice that linked all claims but only that there were systemic deficiencies. The District's challenge to the certified class thus does not rule out the possibility of classes or subclasses that are designed around a policy or practice that links the class as a whole; neither would it rule out separate classes in a consolidated case. *See id.* at 25, 28.

Accordingly, we vacate the order certifying the class and, consequently, the orders finding liability and ordering relief to that class. We remand the case to the district court for reconsideration of whether a class, classes, or subclasses may be certified, and if so, thereafter to redetermine liability and appropriate relief. Because this is the relief that the District seeks, *see* Appellant's Br. at 58; Reply Br. at 24-25, we need not reach the district court's ruling on the scope of the Rehabilitation Act, *see* Oral Arg. Jan. 10, 2013 Tr. at 24-26.

EDWARDS, *Senior Circuit Judge*, concurring: I am pleased to concur in the opinion for the court and do so without caveat. I write separately merely to amplify some points of concern.

During oral argument before this court, counsel for the District of Columbia made the astonishing argument that *Wal-Mart* would bar a class action by disabled children who seek to challenge a clear city policy that forecloses the processing of *all* IDEA claims. Here is the exchange between the counsel for the District and the court:

Judge: I have to say that I am confused about the way you have argued this part. . . . So, imagine that we solve the Rule 23 problem. The statute says the state has to have in effect policies and procedures to ensure the state meets the following conditions and the state announces: "We don't care; we're not going to do it. We have no policy, nothing in effect at all. And therefore, no child in our district will ever get a FAPE [free appropriate public education]." And there is a class action brought by all children who are disabled and have tried to get a FAPE and can't get one because [the city] ha[s] a policy. Do you have any doubt that this could be brought . . . first of all, that this satisfies *Wal-Mart*, you have no doubt that a request for an injunction ordering the state to follow the IDEA and to adopt policies and procedures – without specifying even what they are – would that be a *Wal-Mart* problem?

Counsel: It would be a problem under *Wal-Mart* in the context of IDEA because . . . the reason why the District failed any particular child is not a part of any individual . . .

Judge: But it affects every child in the example I just gave. Right? Every single child because [the city] is not having any FAPE. So, it is not the only reason they failed every child. There [is] additional individualized decisionmaking that has to be made, but here is one policy that affects every child. You

2

have a doubt that *Wal-Mart* permits that kind of injunction?

Counsel: I do your honor. . . .

\* \* \* \*

Judge: Let's say there is a class of 1,000 children all of whom are disabled and none of whom can get any benefits from the District at all because they are "stopped . . . at the door" by a [city] rule that says "we are not going to give you any benefits at all." Why isn't that a "common fact" issue solvable by a single injunction?

\* \* \* \*

Counsel: *Wal-Mart* said that . . . there has to be an up or down resolution of a common contention and the resolution of that common contention has to be central to the validity of each one of the claims. If you break down the class that you are proposing, each individual there would say something like "I was not found . . ."

Judge: No, no, no. Each individual would say I cannot get in the door. . . .

Judge: You heard my example of the [city's] policy. [It] is: "we are not going to follow IDEA at all." That's what it said. Now isn't it the case that every individual who is disabled has a claim that the District follow IDEA and if the District's going-in policy is "we are not going to follow it," [then] everyone has a common claim that their rights are being violated?

\* \* \* \*

Counsel: I really do think there is a disconnect between perhaps the court's understanding of *Wal-Mart* and

mine. But again the court just needn't reach the issue. . . .

Judge: You have now forced us to reach the issue, which is unfortunate for the District of Columbia. You have forced us to reach the issue. . . . Because we know you are going to make the argument [to the District Court] that it is not possible – even if there is a single policy that will affect every single member of the class [and] which can be solved by a single injunction – . . . that *Wal-Mart* doesn't permit that. And *Wal-Mart* expressly does permit that. . . .

Oral Arg. at 1:16:05-22:58.

The argument raised by the District is astonishing because it is patently wrong. *Wal-Mart* surely does not foreclose a class action to challenge a city policy that effectively precludes protected parties from even being considered for benefits that would otherwise be available. And all claimants who are similarly blocked by the policy may join a class action to challenge it. Such a class action would easily satisfy the commonality requirement of Rule 23 even after *Wal-Mart*. *See, e.g.*, *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489-91 (7th Cir. 2012) (explaining that *Wal-Mart* allows a class action to challenge specific, companywide policies that "exacerbate racial discrimination by brokers"), *cert denied*, 133 S. Ct. 338 (2012).

This point is highly relevant with respect to the matters that must be resolved on remand. It is therefore important that the District Court understand that it will be free to certify a class or subclass if it determines that a single policy or practice effectively forecloses disabled children in that class or subclass from pursuing IDEA benefits. *See id*. As Judge Rovner noted in *Jamie S. v. Milwaukee Public Schools*:

[N]otwithstanding the inherently child specific nature of child-find inquiries, a class action based on a truly systemic

child-find failure may be viable. And the fact that it may not be possible to identify individual class members until the remedial phase of the litigation, when prospective members of the class are invited to come forward and establish that they were among those injured by this systemic failure, should not preclude a class action, which may be the only realistic avenue of relief for those injured by systemic violations of their rights.

Systemic violations of the IDEA are cognizable. *See Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997) (coll. cases). . . . Certainly . . . an illegal policy would support a claim for a systemic violation of the IDEA's child-find mandate. But . . . widespread practices might also support such a claim.

668 F.3d 481, 504-05 (7th Cir. 2012) (Rovner, J., concurring in part and dissenting in part). The principles enunciated by Judge Rovner are eminently correct. Even the majority opinion in *Jamie S.* acknowledges that a class action may be pursued "if there [is] 'significant proof' that [the school district] operated under child-find *policies* that violated the IDEA." *Id*. at 498 (majority opinion) (emphasis in original); *see also Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701-02 (4th Cir. 2011) (class action could proceed where "there [was] no dispute that a uniform policy (or obligation) exists or that such a uniform policy applies to all plaintiffs"). The same principle has been followed even in those cases in which class certification has been denied. *See, e.g.*, *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704, 709 (6th Cir. 2013) ("Essential to *McReynolds*, and missing from the instant litigation, were companywide policies that contributed to the alleged disparate impact that arose from the delegation of discretion to individual brokers."); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1229 (10th Cir. 2013) (holding that commonality was not satisfied where plaintiffs "challenge[d] a highly discretionary policy for granting promotions" and defendants

"failed to maintain the [allegedly discriminatory] system in any uniform manner").

During oral argument, the District's counsel acknowledged that a viable IDEA claim may be pursued as a class action. That is undoubtedly correct and nothing in our decision today should be taken to suggest otherwise. We also mean to say that if the District of Columbia has adopted a "stopped at the door" policy or practice that effectively blocks disabled children from being identified pursuant to the child-find requirements of IDEA or from otherwise being considered for IDEA benefits, then the affected children in appropriate classes or subclasses may challenge the policy or practice in a class action. An illegal policy or practice affecting all class members would provide the "glue" necessary to litigate otherwise individualized claims as a class. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011); *see also McReynolds*, 672 F.3d at 489-91. The District's arguments to the contrary are simply misguided, and the District Court should not be lead astray by such claims on remand.