Opinion for the Court by Circuit Judge ROGERS.
Concurring opinion by Senior Judge EDWARDS.
ROGERS, Circuit Judge:
The District of Columbia appeals from the structural injunction entered by the district court in this class action challenging the policies and practices of the District’s “Child Find” system under the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C. § 1400 et seq. It principally contends that the class certification pursuant to Federal Rule of Civil Procedure 23(a)(2) was improper as a matter of law, and that the district court lacked discretion to award systemic relief, or at least acted impermissibly in the absence of an explanation of how it bridged the gap between individual relief and the systemic relief ordered. In view of the clarification in Wal-Mart Stores, Inc. v. Dukes, - U.S. -, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011), of the requirements of Rule 23(a)(2), we vacate the class certification order, and consequently the liability and remedial orders, and we remand the case for the district court to reconsider whether a class, classes, or subclasses may be certified and if so, thereafter to redetermine liability and appropriate relief.
I.
The IDEA provides federal funds to assist States and local agencies in educating children with disabilities “and conditions such funding upon a State’s compliance with extensive goals and procedures.” Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 295-96, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) (quoting Board of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). A “State” is defined to include the District of Columbia. 20 U.S.C. § 1401(31). One of the primary purposes of the IDEA is to “ensure that all children with disabilities have available to them a free appropriate public education.” See id. § 1400(d)(1)(A); Alegria v. Dist. of Columbia, 391 F.3d 262, 263 (D.C.Cir.2004). The IDEA conditions the receipt of federal funding on there being “in effect policies and procedures to ensure” that all children residing therein between the ages of 3 and 21 have access to a “free appropriate public education” (“FAPE”). See 20 U.S.C. § 1412(a)(1)(A). A principal means of fulfilling this obligation is to establish a “Child Find” program under which children with disabilities in need of special education “are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.” Id. § 1412(a)(3)(A). This in- *122 eludes ensuring that “[c]hildren participating in early intervention programs ..., and who will participate in preschool programs ... experience a smooth and effective transition.... ” Id. § 1412(a)(9).
The IDEA provides that “[cjhildren with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title.” Id. § 1412(a)(6). Section 1415 provides that there shall be “an opportunity for any party to present a complaint — (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child.” Id. § 1415(b)(6)(A). Upon exhausting administrative remedies, “any party aggrieved by the findings and decision made ... shall have the right to bring a civil action with respect to the complaint presented.” Id. § 1415(i)(2)(A). A court — after evaluating the “records of the administrative proceedings,” “hearing additional evidence at the request of a party,” and “basing its decision on the preponderance of the evidence” — “shall grant such relief as the court determines is appropriate.” Id. § 1415(i)(2)(C). The Secretary of Education annually reviews the performance plan of a State on the conditions set forth in § 1412 and may withhold or recover funds upon finding poor performance of the IDEA obligations. See generally id. § 1416.
In July 2005, six named plaintiffs, on behalf of themselves and others similarly situated, sued the District of Columbia government and the D.C. Superintendent of Public Schools (hereinafter, “the District”), pursuant to 42 U.S.C. § 1983. They identified themselves in terms of their own experiences at various stages of the IDEA Child Find and FAPE process, see Am. Compl. ¶¶ 5-76, and alleged that the District’s “actions amount to a policy, pattern, practice or custom that violates federal law and shows deliberate indifference to plaintiffs’ federal rights,” id. ¶ 109. Specifically, they alleged that the District’s policies and practices had resulted in systemic failures to identify, locate, evaluate, and offer special education and related services to disabled preschool-age children, in violation of the IDEA, 20 U.S.C. § 1412(a), § 504 of the Rehabilitation Act,[1] federal and District of Columbia regulations implementing the IDEA,[2] and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Am. Compl. ¶¶ 1, 109. As relief, they requested certification of a specified class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure; a declaratory judgment that the District had violated federal and District of Columbia law, including the IDEA, by failing to identify, locate, evaluate and offer a FAPE to eligible children and to ensure a smooth and effective tran *123 sition from early intervention to preschool programs; and preliminary and permanent injunctions ordering the District to “develop and implement adequate and effective policies and procedures and a practical method of identifying, locating and evaluating plaintiffs for special education and related services.” Id. at 33-34. They also sought, among other things, orders enjoining the District to provide “compensatory education to the plaintiffs whom defendants failed to identify, locate, evaluate or offer special education and related services when they were between three and five years old, inclusive,” and to provide reimbursement of privately expended funds for these services, as well as the appointment of a special master. Id. at 35.
In August 2006, the district court certified the specified class pursuant to Rule 23(a) and 23(b)(2).[3] See D.L. v. Dist. of Columbia, 237 F.R.D. 319 (D.D.C.2006). The certified class was defined as:
All children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate, or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.
Id. at 321. The district court found that the Rule 23(a) commonality requirement was met because “plaintiffs ... have a common injury, namely the denial of a FAPE under the IDEA,” and all “allege that defendants have violated the Child Find requirement.” Id. at 322. Regarding Rule 23(a) typicality, the district court found that the “named plaintiffs were injured by the same alleged systemic pattern of IDEA violations that allegedly injured the other class members, and that the named plaintiffs’ injury [was] typical of the other class members’ injuries.” Id. The plaintiffs had, the court explained, “pointed to practices which, if proven, constitute a pervasive pattern and practice of failing to identify, locate, evaluate and offer them services and that defendants lack an adequate Child Find system,” allegations that were “sufficient to satisfy the Rule 23(b)(2) requirement.” Id. at 324.
In 2010, following lengthy discovery, see generally D.L. v. Dist. of Columbia, 274 F.R.D. 320, 322-24 (D.D.C.2011), the district court granted in part the District’s motion for summary judgment, ruling that the plaintiffs could not proceed under 42 *124 U.S.C. § 1983 to enforce the IDEA and rejecting the plaintiffs’ argument “that the IDEA does not provide the full relief they are requesting.”[4] D.L. v. Dist. of Columbia, 730 F.Supp.2d 84, 92 (D.D.C.2010). The district court concluded that a “successful civil action directly under the IDEA ... will have the same effect as a § 1983 action,” and elected to “construe the First Claim of plaintiffs’ Amended Complaint to state a cause of action directly under § 1415(i)(2)(A) of the IDEA.” Id. at 92-93. The district court also granted the plaintiffs’ motion for partial summary judgment as to liability under the IDEA, the Rehabilitation Act, and District of Columbia law. See id. at 94-95, 99-100. Upon reviewing data through 2007, the district court found that the District had denied a FAPE to a large number of children aged 3 to 5 years old in violation of IDEA § 1412(a)(1)(A), id. at 95; failed to comply with its Child Find obligations under § 1412(a)(3)(A), id. at 96-97; and failed to provide children with a smooth and effective transition under § 1412(a)(9), id. at 97-98. The district court proceeded in April 2011 to address liability from 2008 onward. Id. at 101. That month, the District moved to decertify the class.
Before further rulings by the district court, the Supreme Court in June 2011 issued Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 180 L.Ed.2d 374. The District filed a supplemental memorandum of law to its motion to decer-tify the class in July, arguing, in part, that the plaintiffs’ claims were too broad to establish commonality under Rule 23(a) as required by Wal-Mart. In August, the plaintiffs filed a motion for class re-certification and for leave to file their second amended complaint. They proposed to amend the class certification to add four subclasses, consisting of children whom the District failed: (1) to identify or locate for services; (2) to provide with a timely initial evaluation; (3) to provide with a timely eligibility determination; or (4) to provide with a “smooth and effective” transition from early intervention to preschool programs. The plaintiffs also sought a hybrid certification of their declaratory and injunctive claims under Rule 23(b)(2) and their individual claims for compensatory education and reimbursement under Rule 23(b)(3).
The district court denied the District’s motion to decertify the class and granted re-certification of the plaintiffs’ claims for reimbursement and compensatory education under Rule 23(b)(3). D.L. v. Dist. of Columbia, 277 F.R.D. 38, 40-41 (D.D.C. 2011). In denying the District’s motion, the district court found, as relevant, that the plaintiffs had “amply demonstrated there are questions of law and fact common to the class,” all members of which “suffered the same injury: denial of their statutory right to a free appropriate public education.” Id. at 45. It explained that the “differing allegations only represent the differing ways in which the [District] ha[s] caused class members’ common injury.” Id. It identified the common question — the crux of plaintiffs’ claim — to be whether class members received a FAPE, *125 and stated this issue was susceptible to classwide proof. See id. at 45-46. It found the “glue” binding together the various reasons why individual class members were denied a FAPE to be the “systemic failures” within the District’s education system, stating the “[pjlaintiffs presented credible evidence of [the District’s] ineffective policies and practices, which persisted for years without leading to any significant increase in the number of preschool-age children receiving a FAPE.” Id. at 46. Regarding typicality, the district court’s reasons for concluding Rule 23(a)(3) was satisfied were similar to its determination in initially certifying the class. See id. The district court accordingly deemed moot the plaintiffs’ motion to recertify the class using subclasses. See id. at 47.
Thereafter, upon extending its finding of liability to the District’s actions from 2008 to April 2011, D.L. v. Dist. of Columbia, 845 F.Supp.2d 1, 6 (D.D.C.2011), the district court enjoined the District from further violations of the IDEA, § 504 of the Rehabilitation Act, and District of Columbia law, and issued a structural injunction, see id. at 25-34. The injunction included programmatic requirements and numerical goals that would remain in effect until the District demonstrated sustained compliance.[5] See id. The District appeals.
II.
In Wal-Mart, the Supreme Court instructed that under Rule 23(a)(2), the plaintiffs’ “claims must depend upon a common contention” that is “of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” 131 S.Ct. at 2551. “This does not mean merely that [class members] have all suffered a violation of the same provision of law,” for “[w]hat matters to class certification ... is not the raising of common ‘questions,’ ... but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.” Id. (internal quotation marks omitted) (emphasis in original). Likewise, Rule 23(b)(2) allows class treatment “only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.” Id. at 2557 (emphasis in original). The Court explained that “the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.” Id. (internal quotation marks omitted). The Court noted that the district court must conduct a “rigorous” class-certification analysis, id. at 2551 (quoting Gen. Tel. Co. of. Sw. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)), which' may “entail some overlap with the merits of the plaintiffs underlying claim,” id. The Court has since cautioned that “Rule 23 grants courts no license to engage in free-ranging merits inquiries at *126 the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.” Amgen Inc. v. Conn. Ret. Plans & Trust Funds, — U.S. -, 133 S.Ct. 1184, 1194-95, 185 L.Ed.2d 308 (2013); see also Comcast Corp. v. Behrend, 569 U.S. -, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013).
The District contends that the class certified by the district court lacks commonality as a matter of law, and that this court should vacate the certification, liability, and relief rulings. Not to make too subtle a point, the District’s position is that “[a]l-though loosely focused on one general ‘child find’ system, the certified class reaches across different legal requirements applicable to different actors in different agencies at different points of time to children with different disabilities in different factual settings.” Appellant’s Br. at 28. It views the certified class to “eover[ ] failures in four distinct administrative functions: (1) identification of a child as one potentially needing services, (2) location of that child, (3) evaluation for potential services, and (4) if necessary, provision of services.” Id. at 29. In other words, to it “the class definition itself makes plain that named plaintiffs here attempt to amalgamate multiple, distinct categories of claims.” Id. at 28. The class members may suffer from the same violation of law, as the district court found, but, the District urges, there is no common contention whose determination “will resolve an issue ... central to the validity of each one of the claims in one stroke.” Id. at 29 (quoting Wal-Mart, 131 S.Ct. at 2551). The plaintiffs contest the District’s understanding of Walr-Mart’s interpretation of the commonality requirement, maintaining that a pattern or practice of Child Find violations, as here, does affect all class members because the District’s systemic failures result in the failures to identify, locate, evaluate and provide special education services to large numbers of disabled preschool-aged children, regardless of the factual circumstances of the individual children who suffered Child Find violations. Their challenge to the District’s systemwide conduct, they maintain, can be resolved by a single determination.
After Wal-Mart it is clear that defining the class by reference to the District’s pattern and practice of failing to provide FAPEs speaks too broadly because it constitutes only an allegation that the class members “have all suffered a violation of the same provision of law,” which the Supreme Court has now instructed is insufficient to establish commonality given that the same provision of law “can be violated in many different ways.” Walr-Mart, 131 S.Ct. at 2551. In the absence of identification of a policy or practice that affects all members of the class in the manner Wal-Mart requires, the district court’s analysis is not faithful to the Court’s interpretation of Rule 23(a) commonality.
In certifying the class, the district court deemed the plaintiffs’ pattern and practice claims sufficient to meet Rule 23(a)’s prerequisite of commonality. See D.L. v. Dist. of Columbia, 237 F.R.D. at 322; D.L. v. Dist. of Columbia, 277 F.R.D. at 45. Likely so prior to Wal-Mart. See, e.g., Baby Neal ex rel. Kanter v. Casey, 43 F.3d 48, 60 (3d Cir.1994). But Walr-Mart’s interpretation of Rule 23(a)(2) has changed the landscape, as our sister circuits have acknowledged. See Arlington Video Prodns., Inc. v. Fifth Third Bancorp, 2013 WL 560635 at *14 (6th Cir. Feb. 14, 2012); Luiken v. Domino’s Pizza, LLC, 705 F.3d 370, 376-77 (8th Cir.2013); In re Countrywide Fin. Corp., 708 F.3d 704, 709 (6th Cir.2013); Tabor v. Hilti, Inc., 703 F.3d *127 1206, 1228 (10th Cir.2013); M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 839 (5th Cir.2012); McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 487 (7th Cir.), cert. denied, — U.S. -, 133 S.Ct. 338, 184 L.Ed.2d 157 (2012); Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 497 (7th Cir.2012). In Wal-Mart, the Court explained that where the defendant is alleged to have
engage[d] in a pattern or practice of discrimination ... in resolving an individual’s .Title VII claim, the crux of the inquiry is the reason for a particular employment decision. * * * Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members’ claims for relief will produce a common answer to the crucial question why was I disfavored.
Id. at 2552 (internal citations omitted) (emphasis in original). The broad class certified by the district court does not satisfy Rule 23(a)(2)’s requirement for commonality-
The circuit courts of appeals to address the question have hewed faithfully to Wal-Mart’s “one stroke” requirement. For example, in McReynolds, the Seventh Circuit held on interlocutory appeal that a putative class of African American employees who alleged that their employer’s company-wide “teaming” and “account distribution” practices had a disparate impact on their advancement within the company, in violation of Title VII and 42 U.S.C. § 1981, was “not forbidden by the Wal-Mart decision.” 672 F.3d at 490. In Wal-Mart the Supreme Court acknowledged that “ ‘in appropriate cases,’ giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory,” 131 S.Ct. at 2554 (citation omitted), where commonality could be satisfied by “ ‘[significant proof that an employer operated under a general policy of discrimination ... if the discrimination manifested itself in hiring and promotion practices in the same general fashion,’ ” id. at 2553 (quoting Falcon, 457 U.S. at 159 n. 15, 102 S.Ct. 2364). Although in McRey-nolds “each class member would have to prove that his compensation had been adversely affected by the corporate policies, and by how much,” the Seventh Circuit emphasized that a class action on disparate impact meant that “at least it wouldn’t be necessary in each of those trials to determine whether the challenged practices were unlawful.” McReynolds, 672 F.3d at 491. The putative class in McReynolds was appropriate post-Wal-Mart because the economic harm alleged by each class member was the result of the same corporate-wide policies and if the polices were held unlawful then a question central to the validity of each class member’s claim would be resolved in one stroke. See id. at 488-90; see also Floyd v. City of New York, 283 F.R.D. 153, 173 (S.D.N.Y.2012).
In contrast, the harms alleged to have been suffered by the plaintiffs here involve different policies and practices at different stages of the District’s Child Find and FAPE process; the district court identified no single or uniform policy or practice that bridges all their claims. When faced with a similar IDEA lawsuit, the Seventh Circuit in Jamie S., 668 F.3d at 497-98, effectively rejected, in view of a broadly defined class, the attempt to distinguish Wal-Mart’s interpretation of Rule 23(a) commonality in the context of a pattern and practice claim. We do not suggest that widespread policies and practices in violation of the IDEA could never satisfy Rule 23(a)(2)’s commonality requirement after Wal-Mart, see Jamie S., 668 F.3d at 503-05 (Rovner, J., concurring in part and dissenting in part), but rather that, in view of Wal-Mart’s interpretation *128 of Rule 23(a)(2) commonality and the broadly certified class, as in Jamie S. “[t]he plaintiffs’ claims appear to be based on multiple, disparate failures to comply with the [District’s] statutory child find obligations rather than a truly systemic policy or practice which affects them all,” id. at 504-05. For some plaintiffs, for example, the alleged harm suffered is due to the failure of the District to have an effective intake and referral process; for others the alleged harm is caused by the District’s failure to offer adequate and timely education placements to implement individual education plans (“IEPs”); for still others, the cause is the absence of a smooth and effective transition from early intervention programs to preschool programs. Although the district court found that all members of the class are harmed as a result of the systemic deficiencies due to the District’s failure to establish the required Child Find program and FAPE practices and policies, what common “tru[e] or fals[e]” question can be answered for each of these three different claims of harm that would assist the district court in determining the District’s liability as to each group? Wal-Mart instructs that holding that the District has violated the IDEA as to each class member is not enough to establish Rule 23(a) commonality, 131 S.Ct. at 2551, in the absence of a uniform policy or practice that affects all class members.
Again, none of this is to suggest that a class can never be certified in this kind of case. Rule 23(a)(2) does not require that all questions be common to the class. Rather, as noted, the Supreme Court acknowledged that “‘even a single common question’ will do,” id. at 2556 (internal citation and brackets omitted), as long as its determination “will resolve an issue that is central to the validity of each one of the claims in one stroke,” id. at 2551. Likewise, although Rule 23(b)(2) “applies only when a single injunction or declaratory judgment would provide relief to each member of the class,” id. at 2558, the Rule does not bar courts from granting further equitable relief that does not reach every plaintiff in the case. But given Walr-Mart’s interpretation of Rule 23(a) commonality, the requested relief must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member.
The plaintiffs appeared to recognize the problem with the currently certified class when, after Wal-Mart was issued, they moved to add four subclasses consisting of children whom the District failed to: (1) identify or locate for services; (2) provide with a timely initial evaluation; (3) provide with a timely eligibility determination; or (4) provide with a “smooth and effective” transition from Part C to Part B. See Plaintiffs’ Mem. of Law in Support of Their Mot. for Class Re-Certification. In effect, the plaintiffs were suggesting that they could show as to each subclass that the harm caused by the District’s failures stemmed from a policy or practice that would provide a basis for the requested injunctive and declaratory relief. The district court never reached this question. Nor do we. One circuit has suggested, however, that the district court’s certification of subclasses might resolve the Rule 23(a)(2) problem. See M.D., 675 F.3d at 848 (citing Marisol A. v. Giuliani, 126 F.3d 372, 378-79 (2d Cir.1997) (stating that “[o]ne possible method of developing proper subclasses would divide the present class based on the commonality of the children’s particular circumstances, the type of harm the children allegedly have suffered, and the particular systemic failures which the plaintiffs assert have occurred”)).
Although they disagree with the District’s interpretation of the commonality *129 requirement, the plaintiffs have urged that “if,” in view of Wal-Mart, “this Court finds that plaintiffs’ class lacks commonality, remand to the district court to reconsider subclasses would be appropriate.” Appel-lees’ Br. at 46. The District “agrees that [the plaintiffs] should have this opportunity, and that this Court need not consider the subclasses they proposed,” although it “doubts [that even] they comply with Wal-Mart.” Reply Br. at 25. We agree that a remand is appropriate so the district court can determine whether subclasses would meet the requirements of Rule 23(a) commonality after Wal-Mart. We understand the District to take no issue with the district court’s ruling that the IDEA is amenable to class actions. See Oral Arg. Jan. 10, 2013 Tr. at 5, 20, 59. The District has focused on how Wal-Mart appears to have changed the law to require that one injunction address the common harms identified by all the children in the class or subclass, and on the fact that the district court did not find there was any particular policy or practice that linked all claims but only that there were systemic deficiencies. The District’s challenge to the certified class thus does not rule out the possibility of classes or subclasses that are designed around a policy or practice that links the class as a whole; neither would it rule out separate classes in a consolidated case. See id. at 25, 28.
Accordingly, we vacate the order certifying the class and, consequently, the orders finding liability and ordering relief to that class. We remand the case to the district court for reconsideration of whether a class, classes, or subclasses may be certified, and if so, thereafter to redetermine liability and appropriate relief. Because this is the relief that the District seeks, see Appellant’s Br. at 58; Reply Br. at 24-25, we need not reach the district court’s ruling on the scope of the Rehabilitation Act, see Oral Arg. Jan. 10, 2013 Tr. at 24-26.

. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.” 29 U.S.C. § 794(a); see Alexander v. Choate, 469 U.S. 287, 295, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); see also Se. Cmty. Coll. v. Davis, 442 U.S. 397, 412-13, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1266 (D.C.Cir.2008).

. Plaintiffs cited, for example, 34 C.F.R. §§ 104.32-104.39 as well as 5-E D.C.M.R. § 3002.1(a) (requiring the District to "make a [FAPE] available to each child'with a disability, ages three to twenty-two, who resides in, or is a ward of, the District”) and § 3002.1(d) (requiring the District to "ensure that procedures are implemented” to comply with the "Child Find” program "regardless of the nature or severity of the[] [children's] disabilities”). See also 5-E D.C.M.R. § 3000 et seq.

. Rule 23 of the Federal Rules of Civil Procedure provides, in relevant part:
(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
Rule 23(b), "Types of Class Actions,” provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if ...
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunc-tive relief or corresponding declaratoiy relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. * * * *

. The district court had previously denied the District’s motions to dismiss plaintiffs' IDEA claims for failure to exhaust administrative remedies, finding this requirement excused or, in the alternative, already met, D.L. v. Dist. of Columbia, 450 F.Supp.2d 11, 17-19 & 18 n. 2 (D.D.C.2006) (citing Hartman v. Duf-fey, 88 F.3d 1232, 1235 (D.C.Cir.1996)), and for failure to allege disparate treatment solely due to their disabilities for purposes of the Rehabilitation Act, finding the plaintiffs had "alleged sufficient facts to make a prima facie showing that defendants have 'departed grossly' from accepted Child Find practice and standards,” which was sufficient to meet the Rehabilitation Act pleading standards, D.L. v. Dist. of Columbia, 450 F.Supp.2d 21, 23-24 (D.D.C.2006).

. Specifically, such compliance "shall begin after [the District], during a single year ('the baseline year’), meet[s] or exceed[s] all three numerical requirements” and concludes within two or three years if certain additional conditions are met. D.L. v. Dist. of Columbia, 845 F.Supp.2d at 29. But "if [the District] fail[s] to meet any of the numerical requirements ... defendants must establish a new baseline year of compliance before being able to show sustained compliance.” Id.